*J. W. Gorin, for appellant.*

——, *for appellee.*

---

PRESCOTT & BROS. *v.* W. J. ANNIS, ETC.

**Pleading—Based on Information and Belief.**

A petition based merely upon information and belief that certain property of plaintiff had been attached and sold as the property of another, is indirect and equivocal, and insufficient.

APPEAL FROM McCRACKEN CIRCUIT COURT.

January 11, 1873.

OPINION BY JUDGE LINDSAY:

Up to the time of the prosecution of this appeal it seems that no formal judgment had been rendered settling the rights of the appellants, Prescott & Bros. The judgment of August 6, 1870, makes no allusion whatever to the matters set up in their petition and answer. But treating the appropriation of the funds of the court as a practical dismissal of their petition, we do not see from the record that they have any legal ground of complaint.

The returns of the sheriff upon the orders of attachment sued out by Sanders and by John Martin Ison & Company, do not show that any of the property claimed by them was levied on or sold.

They state in their petition that they are informed and believe that certain organs and seats belonging to them had been attached and sold as the property of Annis.

Such indirect and equivocal pleading ought not to be tolerated. If their petition had been taken for confessed, it could not have been held that appellees admitted more than that Prescott Bros. had been informed, and therefore believed, that property belonging to them had been sold under the attachments of appellees. Appellants failed to show either by their pleadings or by proof that they were entitled to any relief whatever.

Wherefore the judgment of the circuit court must be *affirmed*.

*Rodman, for appellants.*

*S. C. Bryce, J. W. Hopkins, for appellees.*

---

JOHN CAMPBELL'S ADM'R *v*. JAS. B. MITCHELL.

**Contracts—Validity—Drunkenness.**

Drunkenness alone will avoid a contract if it is to such extent as to prevent the party from understanding the nature of the contract.

**Specific Performance—Lease Contract—Drunkenness.**

A chancellor will not enforce a lease contract which was procured from the lessor while in such a state of intoxication as to be unable to understand the nature and importance of the transaction, especially when the consideration for the lease was less than half its real value.

APPEAL FROM MADISON CIRCUIT COURT.

January 11, 1873.

OPINION BY JUDGE PRYOR:

The testimony in this case conduces to show that John Campbell, for many years prior to his death, was much addicted to the use of ardent spirits, and to such an extent as that many, if not all, of his neighbors regarded him as an habitual drunkard.

His father, Samuel Campbell, with a view of reforming his son, and to enable the latter to support his family, placed him in possession of a valuable tract of land, with a promise at the time, made in parol, that if he would abstain from drink or abandon his intemperate habits he would make him an absolute deed to the property.

The son entered into the possession and assumed various acts of ownership over it, by cultivating the soil and occasionally renting some portions of the land.

His appetite for liquor seems to have increased instead of diminished by reason of the efforts upon the part of the father to reform him, and before the expiration of two years Samuel Campbell sold the land to R. B. Dunn and made him a conveyance therefor. Prior to the execution of the deed by Samuel Campbell to Dunn, John Campbell had, without the knowledge of his father or Dunn, so far as the proof shows, executed a writing purporting to lease the land to the appellee, Mitchell, for the term of three years, at three hundred dollars per year. Mitchell asserted his right to the land, and the present suit in equity was filed by the vendee, Dunn, for the purpose of quieting his title and possession.

John Campbell is made a defendant to the cross-petition of Mitchell, by which he is seeking to enforce his contract of leasing or recover of the former damages by reason of his failure to comply with his contract. The defense of John Campbell to this cross-petition is that he was in such a condition at the time he signed the lease by reason of his drunkenness as to render him incompetent to execute such a writing.

The court below rendered a judgment, quieting the title and possession of the appellee, Dunn, and rendered a further judgment in favor of Mitchell upon his cross-petition against John Campbell's administrator (John Campbell having died) for six hundred dollars in damages.

The depositions of John Campbell and his wife having been taken prior to the passage of the law permitting parties to testify were incompetent to be read upon the issue made between Mitchell and John Campbell on the cross-petition. The testimony, however, as to the intemperate habits of John Campbell, viz.: His constant and excessive use of stimulating drinks, is so conclusive that any contract made with him that failed to evidence fair dealing must be regarded by the chancellor with suspicion.

It may be that his mental capacity was not questioned by many of his neighbors, for the reason that, although constantly under the influence of liquor, his contract gave evidence of his own knowledge of what he was doing, for in nearly all the contracts made by him prior to the date of this pretended lease, he seems to have given, and always received, a fair consideration.

When this lease was signed, however, there is no doubt but what he was so drunk as to destroy every faculty necessary to enable him to understand an ordinary business transaction.

Mitchell found him in this condition when he proposed to have the writing executed, and not content with delaying its execution until the man had regained his reason, he left Campbell's house and went to a neighboring school house and there dictated the terms of the contract to the teacher and the latter drafted the lease. On his way, either to or from the school house, he was told by a witness whose veracity is not questioned that as soon as Campbell got sober he would refuse to abide the contract, as Mitchell's response was, in substance, that he intended to have it executed before he got sober, or, in the language of the witness, "to fasten him whilst he is in the humor."

The contract was at once signed by Campbell, but seems never to have been delivered, why it was not delivered, does not appear from the proof. It is true that the appellee, Mitchell, attempted to show that a few days after this writing is said to have been executed, Campbell wanted to know of Mitchell if he, Mitchell, was satisfied with the contract, and the latter answering in the affirmative, propounded the same question to Campbell and he responded in the same way. This manifestation of anxiety so clearly proven of the appellee, creates of itself a suspicion as to the fairness of the transaction.

It is shown by one witness that in the morning of the day this

trade is said to have been made, that Campbell had a jug of whisky at his house, but was then sober; it is shown by another witness that Campbell was not only drinking but drunk.

The best evidence, however, of his drunkenness is to be found in the statements of the appellee's own witness. They all, or most of them, prove that Campbell was competent to trade and had mental capacity sufficient to enable him to understand and know what he was doing; and still, in order to enable the appellee to recover in this case, he shows by more than one witness that the land rented him by Campbell was worth more than double what he was to give for it.

Clark swears that the place was worth four hundred dollars per year more than Mitchell gave him for it, and that Mitchell sustained that much damages, in other words, it was worth for the three years $2,100 instead of $900.

The judgment of the chancellor is that from the testimony it was worth six hundred dollars more than the appellee agreed to give for it, and the opinion of this court from the proof is, that it was worth double the amount of the agreed price, and these opinions, added to the stupid and drunken condition of Campbell at the time, are deemed sufficient reasons for disregarding this pretended claim. Drunkenness alone will avoid a contract, if to such an extent as to prevent a party from understanding the nature of the contract he is making. 1 Hilliard on Contracts 308.

When you add to drunkenness the fact that the property has been sold or purchased by the inebriate at less than half its value, neither the father's silence, if proven, or John Campbell's great desire to know if the appellee was satisfied with the terms will induce the chancellor to enforce such an unconscientious bargain.

The judgment of the court below in favor of Mitchell against John Campbell's administrator is reversed, with directions to dis-- miss his cross-petition, and is affirmed on the cross-appeal.

*Burnam, Carpenter, for appellants.*

*Barnett, Turner & South, for appellee.*