CHARLES A. DUPEE *et al.*

*v.*

CHARLES P. SWIGERT, Auditor.

*Filed at Springfield April 5, 1889.*

1. BANKS AND BANKING—*State Banking law—vote of the people—constitutional requirement.* The vote of the people contemplated by section 5, article 11, of the present constitution, which directs that no act of the General Assembly authorizing associations with banking powers shall go into effect "unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law," is the vote of the people of the whole State, and not of particular localities of the State.

2. SAME—*limitation as to population—the statute construed.* An application was made to the State Auditor for a permit to organize a bank in the city of Chicago, which has a population of more than ten thousand persons, under "An act concerning corporations with banking powers," approved June 16, 1887. One of the reasons assigned by the Auditor for refusing to grant the permit was, that the act in question does not apply to cities having a greater population than ten thousand. Upon *mandamus* to compel the Auditor to grant the permission sought, it was *held,* there is nothing in the Banking law of 1887 which forbids the organization of banks under its provisions in cities of over ten thousand population.

3. The intention of the legislature in the passage of the Banking law of 1887, as appears from its various sections and provisions, was to make it general enough to apply to cities having a greater population than ten thousand, as well as to those having a less population.

4. SAME—*stockholder's liability—under Banking law of 1887—constitutionality.* A clause of section 6 of the Banking law of 1887, providing for individual liability of stockholders, is as follows: "The shareholders of each association formed under the provisions of this act shall be held

individually responsible, equally and ratably, and not one for the other, for all contracts, debts and engagements of such person or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares:" *Held,* that such provision, being in conflict with section 6 of article 11 of the constitution, was void, but might be rejected, leaving the other constitutional provisions of the act to stand and be executed, and the constitutional provision being self-executing, would fix the liability of the stockholders.

5. The constitutional provision in regard to the liability of stockholders in banking institutions is self-executing, and needs no legislation to enforce it, and being a part of the organic law, requires no vote of the people to make it more effective. Such provision becomes a part of every banking law. If a banking law fixes a different and less liability, such provision of the act will be void, and this provision of the constitution will take its place.

This was a petition for a *mandamus,* filed in this court by the relators, Charles A. Dupee, Noble B. Judah and Monroe L. Willard, against Charles P. Swigert, Auditor of Public Accounts.

Mr. Charles A. Dupee, for the petitioners:

As to the proper rules of interpretation of an act of the legislature, see *People* v. *Canal Comrs.* 3 Scam. 153 ; *Stribling* v. *Prettyman,* 57 Ill. 371 ; *Perteet* v. *People,* 65 id. 230 ; Smith's Com. sec. 715, p. 830 ; Dwarris on Statutes, 702 ; *Frye* v. *Railroad Co.* 73 Ill. 399 ; Cooley's Const. Lim. 55 ; *Waller* v. *Harris,* 20 Wend. 561 ; *People* v. *Purdy,* 2 Hill, 35 ; 4 id. 384 ; *Denn* v. *Reid,* 10 Pet. 524 ; *Spragins* v. *Houghton,* 2 Scam. 377 ; *Beardstown* v. *Virginia,* 76 Ill. 34 ; *Perry County* v. *Jefferson County,* 94 id. 214 ; *Prince* v. *Quincy,* 105 id. 138.

An interpretation of the act which should limit its operation to towns of not more than ten thousand population, would defeat the intention of the legislature to enact a general banking law. *People* v. *Hoffman,* 116 Ill. 597.

Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention is to be construed in the nature of an exception. Potter's Dwarris, 117.

When a statute creating a right makes certain express exceptions, it by necessary implication excludes all other exceptions. *Eldridge* v. *Pierce*, 90 Ill. 474; *Gaddis* v. *Richland County*, 92 id. 119; *Prince* v. *Quincy*, 105 id. 138.

No question of policy or expediency which the court can entertain, can require an interpretation of the act as one limited in its scope. Sedgwick on Stat. and Const. Law, 325.

As to what are local and special laws, see Potter's Dwarris, 53; Sedgwick on Stat. and Const. Law, 24; *People* v. *Cooper*, 83 Ill. 589; *Jefferson County* v. *Jones*, 63 id. 531; *Devine* v. *Cook County*, 84 id. 592; *People* v. *Holtz*, 92 id. 426; *People* v. *Meech*, 101 id. 200; *Kingsbury* v. *Sperry*, 119 id. 286.

The act is not local or special, in that it classifies cities and arranges different minimum capital for banks in the different classes. If the first clause of section 11 be construed as making the act local, special and unconstitutional, that clause should be rejected, and the remainder of the act held valid. *People* v. *Brown*, 11 Ill. 478; 67 id. 503; 116 id. 326.

Mr. GEORGE HUNT, Attorney General, for the respondent:

The entire act must be construed together, and will, if possible, be so construed that all parts of it may stand. *Perteet* v. *People*, 65 Ill. 230.

The meaning of the words used must govern in construing laws, and the intention must be gathered from such words. *Richman* v. *Carstairs*, 5 B. & A. 129; *Beardstown* v. *Virginia*, 76 Ill. 34; *Frye* v. *Railroad Co.* 73 id. 399.

The provisions of the act do not make it a general banking law, and the legislature, by the change which it made in the title, conclusively negatives the idea that it intended to enact a general banking law.

A statute is not special simply because it applies to a class of persons. It is general if it applies to all persons in the State similarly engaged. *Hawthorn* v. *People*, 109 Ill. 302; *People* v. *Hoffman*, 116 id. 587; *Potwin* v. *Johnson*, 108 id. 70.

When the meaning is plain, the consequences will not be considered. Potter's Dwarris, 213; *Mills* v. *St. Clair County,* 8 How. 569.

Section 5, article 10, of the constitution of 1848, contained restrictions on the power of the legislature to pass laws conferring banking powers. This was held not to deprive the General Assembly of the power to pass laws granting charters containing some banking powers. (*People* v. *Loewenthal,* 93 Ill. 191.) The present constitution has placed still further restrictions on the legislature to confer banking privileges. Const. sec. 5, art. 11.

Where an act is unconstitutional, the legislature must provide the correction. Courts have no power to do so. *Union Building Association* v. *Chicago,* 61 Ill. 439.

A banking law can not be valid unless the requirements of section 6, article 11, of the constitution, be in some manner made a part of that law. The legislature must adopt that section as part of the law, or incorporate similar provisions, or it must leave the law in such condition that it shall not be inconsistent with section 6, article 11, of the constitution, and so that the court may say the constitutional provision was intended to be a part of the law. This the legislature did not do.

The constitutional provision can not be considered self-acting, and construed as a part of the law, for the reason the constitution is merely a limitation on the power of the legislature. It does not confer powers, but restrains. It limits the legislature, in passing a banking law, to a law or laws which shall impose on the stockholder the liability declared in section 6, article 11, of the constitution. The constitution does not, itself, impose penalties or liabilities.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a petition for a mandamus by Charles A. Dupee and others against the State Auditor to compel him to issue to the petitioners "a permit to organize" a bank in the city of Chicago,

which has a population of more than ten thousand persons, under "An Act concerning corporations with banking powers," passed by the Legislature of Illinois, and approved June 16, 1887. (Laws of Illinois of 1887, page 89).

The Auditor refused to grant permission to organize under the Act upon two grounds as set up in his answer to the petition. The first ground is that the Act in question does not apply to cities having a greater population than ten thousand; the second is, that the provision of the act in regard to the liability of the stockholders is unconstitutional.

We think that both the reasons assigned for the refusal are insufficient, and that the permission applied for should have been granted.

The contention that no bank can be organized in any city, whose population exceeds ten thousand, is based upon the first clause of section 11 of the Act, which reads as follows: "Associations may be organized under this act in incorporated towns, villages or cities of not to exceed five thousand population with a capital stock of not less than $25,000.00, and in all cities, villages or incorporated towns of not to exceed ten thousand population with a capital stock of not less than $50,000.00." Evidently the design of this clause was to fix a minimum of capital for towns, cities and villages having a certain designated amount of population, but, when considered in connection with the rest of the act, it does not restrict the organization of banks to towns, cities and villages, whose population does not exceed ten thousand.

The first ten sections of the act are general in their nature, and express a general intention on the part of the Legislature to provide for the formation of banks and banking associations anywhere in the state, in cities having a population greater than ten thousand, as well as in those having a less population.

The first section says: "it shall be lawful to form banks and banking associations for the purpose of discount and deposit," etc. Here is no designation of particular cities to

which the formation of banks is to be confined. If the construction contended for be correct, the first section would have said: "it shall be lawful to form banks and banking associations for the purpose of discount and deposit, etc., in the towns, cities and villages having the amount of population hereinafter designated."

Again, section one provides "that on a ratification of this act by a vote of the people in accordance with the constitution of this state, it shall be lawful to form banks and banking associations," etc. The provision of the constitution here referred to is Section 5 of article 11, which directs that no act of the General Assembly, authorizing associations with banking powers, shall go into effect, "unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law." There can be no doubt that the "vote of the people" contemplated by this provision of the constitution is the vote of the people of the whole state, and not of particular localities in the state. In other words, any statute, which authorizes the formation of banking corporations, must be approved by the votes of the people of the state at large. It follows that the intention of the Legislature to submit the act of June 16, 1887, to the votes of the people of the whole state is manifested by the language used in the first section of the act. The petition in this case avers, and the answer admits, that the act in question has been ratified by the votes of the people of the whole state.

But why ask all the people of the state to vote upon a measure which could only interest a part of the people? If the law under consideration was only to be in force in cities, whose population should not exceed ten thousand, why submit the question of its adoption to the large body of people living in cities having a greater population than ten thousand? The latter could have no special interest in the organization of

banks of discount and deposit in cities having a population of only ten thousand or less. It might be otherwise if the banks to be formed were to be banks of issue, but the act in question confers no power to issue bills to circulate as money.

Section 5 of article 11 of the constitution unquestionably contemplated that the banking acts, which were thereby required to be submitted to the votes of the people of the state, should be acts sufficiently general in their character to be of interest to all the people of the state and to be applicable in all parts of the state. That the intention of the legislature in the passage of the act of June 16, 1887, was to make its provisions general enough to apply to cities having a greater population than ten thousand, as well as to those having a less population, is apparent from the provision made in section one of the act for its ratification by a vote of the people in accordance with section 5 of article 11 of the constitution.

Section 2 of the Act provides that "when any association of persons desire to avail themselves of the provisions of this act, they may apply to the auditor for permission to organize, stating their place of business," etc. What language could be more general than this? Those desiring to organize are not required to state in what city, town or village, having a population of ten thousand or less, their place of business may be located. They are required to state their place of business, whether it be in a city containing a greater or a less population than ten thousand. The "association of persons," which is authorized to apply for permission to organize, is "*any* association of persons," whether living in a city of one hundred thousand inhabitants, or in a city of only ten thousand inhabitants.

The third section provides for subscriptions to the capital stock and for the election of directors; the fourth, for the organization of the board of directors, the appointment of officers, fixing salaries, making by-laws, taking by the directors of an oath prescribed by the Auditor, keeping books of record and fur-

nishing copies of the same and lists of the stockholders to the auditor, etc.; the fifth section provides for an examination by the auditor into the affairs of the bank after the directors have organized and the capital stock has all been paid in, for the issuance of the Auditor's certificate under seal authorizing the association to commence business, for the recording of said certificate which is made evidence in all courts of the existence and authority of the corporation to do business, which said fifth section closes with the following words: "Upon the recording of said certificate and permit said bank shall be deemed fully organized and may proceed to business;" the sixth section provides for the liability of the shareholders; the seventh, for the making under oath and publication of quarterly reports to the auditor as to the resources and liabilities of the bank; the eighth section provides for examinations by the auditor into the affairs of the bank at least once in each year or oftener together with power to examine the officers, agents, etc., under oath; the ninth section provides that associations under the act may be bodies corporate and politic with power to sue and be sued, to have a common seal, to own real estate necessary to be used in carrying on business, etc.; the tenth section fixes the limit to which the association shall be confined in lending its funds, etc.

It will thus be seen that, before the eleventh section is reached, the first ten sections provide in general terms for the organization of banks, and prescribe all the machinery for such organization. "Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention is to be construed in the nature of an exception." (Potter's Dwarris' Stat. p. 117). A general intention to permit the organization of banks in all the cities of the State is expressed in the first ten sections, and if any particular intention is expressed in the first clause of section 11, which is incompatible with such general intention, it is to be construed as an exception thereto.

The words of section 11 as above quoted are words of limitation and restriction, and not words of grant. But the limitation has reference to the capital stock, and not to the location of the bank.

The clause, in which the words of limitation occur, does not restrict all the previous provisions of the act to the organization of banks in towns, cities or villages, whose population does not exceed ten thousand; but its meaning is, that banks organized in towns, villages or cities, whose population does not exceed five thousand, must have a minimum capital of at least $25,000.00, and that banks organized in towns, cities or villages, whose population is in excess of five thousand but does not exceed ten thousand, must have a minimum capital of at least $50,000.00; while banks organized in towns, cities or villages, whose population is more than ten thousand, are not required to have any specified amount of capital. Banks are thus divided by this restrictive clause into three classes, each distinguished from the others by the amount of population of the town, city or village where it is located, and by the nature of the provision made for it upon the subject of capital stock.

Whether the classification here indicated be a classification of *banks,* based upon the amount of population in the places of their location and upon the amount of capital paid into their treasuries, or a classification of *towns, cities and villages,* upon the basis of differences in population and differences in the character of the banks which do business in them, in either case the part of the act, which provides for such classification, is obnoxious to the constitutional prohibition against special legislation. The classification is purely arbitrary, and has no foundation in reason or justice. There are no material distinctions between the things classified, and it is entirely feasible to apply to them all a single uniform rule.

Any considerations, which would make it wise or proper to restrict a bank in a city of five thousand inhabitants to a

minimum amount of capital, would make it equally wise or proper to apply such restriction to a bank in a city of larger population. If persons living in a city, whose population is more than ten thousand, have the right to organize banks without restriction or limitation as to the amount of capital to be paid in, there is no reason why the same right should not be exercised by persons living in cities, whose population is only ten thousand, or five thousand. The charter will inform the public what the amount of capital is, and, if it is all paid in as provided in the charter, the public is protected, so far as that matter is concerned.

By the first clause of section 11 the privilege of doing a certain kind of business is subjected to conditions, which have no other basis than the mere accident of residence; men, who live in a place of a certain size, are permitted to organize a banking corporation if they comply with certain terms, while men, who live in a place of a different size, may so organize without the imposition of any terms. This is special legislation of a most serious and unjust character.

But it does not follow, that the whole act must fail, because the restriction thus contained in section 11 is unconstitutional. Whether or not an unconstitutional clause or section can be taken out of an act, so as to permit the other clauses and sections to continue in force, will depend upon the relations of the former to the latter. If the rejected clause or section is so independent of the other provisions, that, without it, the latter are complete and fully capable of execution, the act will be "construed the same as if the void part had never been inserted." (*Myers* v. *People,* 67 Ill. 503 ; *People* v. *Hazelwood,* 116 id. 326 ; Cooley's Cons. Lim. pp. 177-179.)

A careful inspection of the banking act of June 16, 1887, will show that the restrictive provision, which fixes the minimum amount of capital stock for banks in certain towns, villages and cities, is not necessary to the symmetry or perfection of the balance of the act. It is not so connected with or

dependent upon, either the other sections, or the remaining portion of section 11, that it can not be eliminated without interfering with their force and effect.

If the first clause of section 11, as above quoted, and the word, "and," which follows it, and also the clause, which reads thus: "if the reduction should not bring the capital below the provision of this section;" be stricken from section 11, it will be a complete section in itself, and will read as follows: "Should the capital of any bank organized under this act become impaired, the Auditor shall give notice to the president to have the impairment made good by assessment of the stockholders or a reduction of the capital stock of such bank; and if the capital stock of said bank shall remain impaired for thirty days after notice by the Auditor, he shall have power, and it is hereby made his duty, to enter suit against each stockholder in the name of the People of the State of Illinois," etc. We are, therefore, of the opinion that the clause in question, and the words following it, as above specified, should be rejected as being unconstitutional and void, and that the balance of the Act should be permitted to stand subject to the change and qualification hereafter indicated.

The second ground, upon which the auditor refused to issue to petitioners the "permit to organize" provided for in the second section of the Act, is the unconstitutionality of the first clause in section six. That clause reads as follows: "The shareholders of each association formed under the provisions of this act shall be held individually responsible equally and ratably, and not one for the other, for all contracts, debts and engagements of such person or association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

Under this provision, as we understand it, a claim against a bank must be apportioned ratably among the stockholders; each stockholder is liable only for his ratable share and no more; the owner of such claim must sue each stockholder for

the latter's ratable proportion, and, if one of the stockholders is insolvent, his share can not be collected of the other stockholders, but the creditor must lose it.

The clause of section 6 of the act, as thus interpreted, is in conflict with section 6 of article 11 of the constitution, which is as follows: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." Under the section of the constitution thus quoted, every stockholder is liable for the debts of the bank to an amount equal to twice the amount of stock held by him, and may be sued for such amount by any creditor, whose claim is large enough to cover it; the question of contribution must be settled between the stockholders themselves.

But the elimination of the first clause of section 6 of the act by reason of its unconstitutionality will not render the remaining provisions incapable of execution. Section 6 of article 11 of the constitution must be substituted for the first clause of section 6 of the Act, and must be regarded as being a part of the Act itself, and as bearing the same relation, whether of dependence or independence, to the balance of the law, as would be sustained by the unconstitutional clause, if it were permitted to stand.

The constitutional provision in regard to the liabilities of stockholders in banking institutions is a self-executing provision, and needs no legislation to enforce it. Being a part of the organic law, it requires no popular election to make its effect more binding. No banking Act can go into operation in this state of which the constitutional provision in question shall not be a part. By virtue of the inherent power of the constitution itself, such provision is grafted into every banking law, which is passed by the legislature or submitted to the votes of the people. This doctrine was announced by the

Supreme Court of the United States in *East St. Louis* v. *Amy*, 120 U. S. 600, and followed by this court in *City of East St. Louis* v. *The People*, 124 Ill. 655. Accordingly the liability of the stockholders under the act of June 16, 1887, is such as is fixed by the constitution; and that part of the Act which attempts to establish a different liability from the one named in the constitution, is void.

The writ of mandamus will be awarded in accordance with the prayer of the petitioners.      *Writ granted.*

Mr. Justice Bailey, dissenting:

I fully concur in the opinion of Mr. Justice Magruder, except so far as it assumes to pass upon the constitutionality of those provisions of section eleven of the act fixing the minimum amount of the capital stock of banking corporations in towns, villages and cities having a population of not exceeding five thousand, and also in those having a population not exceeding ten thousand, and holding those provisions to be unconstitutional. The opinion holds, and I think correctly, that it is the general scope and intention of the act, to permit the organization of banking corporations in all towns, villages and cities in the State, irrespective of their population, and that the provisions of section eleven must be construed as words of limitation and restriction and not words of grant. Those provisions must therefore be held to relate solely to communities having only the population therein specified, and they can therefore have no application to cities having a population exceeding ten thousand.

The present case involves the application of the act to the organization of a banking corporation in the city of Chicago, having a population much larger than that specified in section eleven. The provisions of that section have therefore no application, and so long as the residue of the act may be held valid even though section eleven should be held unconstitutional, the question of the unconstitutionality of that section

can be of no materiality in deciding the case before us. The relators are no more entitled to the writ of mandamus upon one view of that question than upon the other. When the question of the constitutionality of that section arises in a case involving the organization of banking corporations in any of the towns, villages or cities specified in section eleven with a capital less than the minimum therein prescribed, it will be time enough to determine whether the limitations prescribed in that section are invalid or not.

Though unable, to the extent above indicated, to yield my assent to the opinion of Mr. Justice MAGRUDER, I concur in his conclusion that a peremptory writ of mandamus should be awarded.

CRAIG, C. J., and SHOPE, J., dissenting.

MR. JUSTICE BAKER: I concur in the views expressed by Mr. Justice BAILEY.