THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE ADAMS STATE BANK, Appellant.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. CONSTITUTIONAL LAW—*section 11 of the State Banks act is valid.* The classification made by section 11 of the State Banks act, which fixes the minimum of capital stock required on the basis of population of the city, town or village where the bank is proposed to be organized, is a reasonable classification for securing the protection of depositors and enabling the stockholders to obtain a fair return on their investment; and such section is not invalid as in violation of the provisions of section 22 of article 4 of the constitution against special legislation. (*Dupee* v. *Swigert,* 127 Ill. 494, distinguished.)

2. BANKS—*word "towns," as used in section 11 of the State Banks act, means incorporated towns.* The word "towns," as used in section 11 of the State Banks act, referring to the minimum of capital required for organizing banks in cities, towns and villages of certain size, means incorporated towns.

3. SAME—*effect upon State bank when village is annexed to a city.* Where a village in which a State bank is organized with a capital stock of $25,000 is subsequently annexed to a city of a size requiring, under section 11 of the State Banks act, a greater capital, the bank cannot move its location to any point it may desire within the city without increasing its capital stock but is limited to a location within the territory which comprised the village before the annexation took place; and this restriction does not amount to an unconstitutional impairment of contract nor a deprivation of property rights without due process of law.

FARMER, C. J., and DUNN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

HOMER SULLIVAN, (LUTHER F. BINKLEY, and HOW-
ARD F. BISHOP, of counsel,) for appellant.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY,
for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

An information in the nature of *quo warranto* was filed
in the circuit court of Cook county by the Attorney Gen-
eral, on behalf of the People, against the Adams State
Bank, a banking corporation organized under the laws of
Illinois. The Attorney General demurred to the pleas of
the bank, the court sustained the demurrer, found the bank
guilty of usurpation and abuse of its franchise and charter,
entered a judgment of ouster and assessed a fine in the sum
of one dollar. This appeal has been perfected from that
judgment.

The information charges that prior to April 22, 1914,
Morgan Park was a village in Cook county with a popula-
tion of less than 5000 inhabitants; that the Adams State
Bank is a corporation organized October 30, 1913, under
the State Bank act; that its charter and articles of incor-
poration recite that the bank is located in Morgan Park and
has a capital stock of $25,000, and that it is formed and
organized for the purpose of doing a general banking busi-
ness; that some time between October 30, 1913, (the date
of its organization,) and November 16, 1914, it began do-
ing a general banking business at 3945 West Twenty-sixth
street, in the city of Chicago, a city of more than 50,000
inhabitants, and that for the two months then last past had
carried on a general banking business at that place in the
city of Chicago without warrant or authority and contrary
to the statutes, and the information prays that it may be
required to answer by what warrant it claims to use and
enjoy such privileges. The bank replied by pleas question-
ing the constitutionality of section 11 of the State Bank
act. The pleas also allege the organization of the bank

and the commencement of business by it prior to April 7, 1914, in Morgan avenue, in the village of Morgan Park; that said village was annexed to the city of Chicago by the voters of that city at an election held April 7, 1914, and by the voters of the village at an election held on the 21st day of April, 1914; that thereupon the bank became a resident of the city of Chicago; that on account of the imposition of additional obligations and duties upon the bank through the action of the people of the village in extending the boundary lines of the village and becoming merged in the city of Chicago it became necessary for the bank to remove its quarters, and on November 1, 1914, it removed its banking quarters from Morgan avenue to 3945 West Twenty-sixth street, in the city of Chicago.

Two questions of law are presented for our determination: First, is section 11 of the State Bank act unconstitutional? And second, after the annexation of the village of Morgan Park to the city of Chicago is appellant's place of business limited to the territory which had theretofore comprised the village?

The principal contention is that section 11 of the State Bank act is unconstitutional for the reason that it contravenes section 22 of article 4 of the constitution, which prohibits the passage of local or special laws in the instances therein specified, and in support of this contention it is insisted that the classification contained in said section 11 is unjust and unreasonable. Appellant relies almost entirely upon *Dupee* v. *Swigert,* 127 Ill. 494, in support of this contention. In that case the State Bank act, as it was originally passed in 1887, was under consideration. By section 11 of the act as originally passed it was provided that banks might be organized under the act in cities, villages and incorporated towns of not to exceed 5000 inhabitants with a capital stock of not less than $25,000, and in all cities, villages and incorporated towns of not to exceed 10,000 inhabitants with a capital stock of not less than

$50,000. No provision whatever was made for the amount of capital stock of banks to be organized in any city whose population exceeded 10,000 inhabitants. We held in that case that this classification was obnoxious to the constitutional prohibition against special legislation and that it was purely arbitrary and had no foundation in reason or justice. Since that case was decided section 11 of the State Bank act has been amended, and it now provides, in substance, that banks may be organized under the provisions of the act in all cities, towns and villages with a minimum capital stock, according to population, as follows: In all cities, towns and villages of not exceeding 5000 inhabitants, $25,000; of over 5000 and not less than 10,000 inhabitants, $50,000; of 10,000 and less than 50,000 inhabitants, $100,-000; and of 50,000 inhabitants or more, $200,000. (Hurd's Stat. 1913, p. 120.) This amendment meets the objection raised and considered in *Dupee* v. *Swigert, supra.* One of the important matters to be considered by the legislature in providing for the organization of banking corporations is the protection to be afforded those who deposit money with such institutions. Section 6 of article 11 of the constitution provides that every stockholder in a banking corporation shall be liable to its creditors, over and above the amount of his stock, to an amount equal to such stock for all liabilities of the institution accruing while he remains a stockholder. This section of the constitution is a self-executing provision. (*Dupee* v. *Swigert, supra.*) It will thus be seen that the extent of the protection afforded the depositors of a banking corporation is measured by the amount of the capital stock of the institution. It was a fair and natural assumption on the part of the legislature that the larger the number of inhabitants in any city, town or village, the larger would be the wealth of that community. In order to insure the depositors of banking corporations organized under the act relatively equal protection a classification in reference to population is a just and rea-

sonable one, and the classification made by section 11 of the State Bank act is not in conflict with section 22 of article 4 of the constitution.

Upon the theory that the word "towns," as used in said section 11, refers to townships, it is contended that the act does not operate equally in all sections of the State, inasmuch as in counties not under township organization no capital stock whatever is required for a bank organized outside the corporate limits of a city or village. This assumes that a banking corporation may be organized under this act outside the incorporated limits of a city, town or village. It is not necessary to determine here whether that assumption is correct, as the word "towns," as used in the act, evidently refers to incorporated towns.

The principal question argued, and the one which is the real bone of contention between the parties, is whether appellant, after the annexation of the village of Morgan Park to the city of Chicago, had a right to change its place of business from the territory which had formerly comprised the village of Morgan Park to any place within the city of Chicago as it had existed prior to the annexation of the village. On both sides it is contended that the charter of appellant constitutes a contract between it and the State, and appellant seeks to invoke the doctrine that this contract cannot be impaired without its consent under the constitution of the United States and the constitution of Illinois. We are called upon to do no more and no less than to construe the meaning of the statute under which appellant was organized, and thus to construe the meaning of its charter or contract with the State. It certainly would constitute no impairment of the contract existing between appellant and the State to announce its true construction, even though that construction should be contrary to the views held by appellant. Section 11 of the State Bank act fixes the minimum amount of capital stock of banking corporations to be organized in cities, towns and villages of certain specified

population. As has been pointed out, this classification is grounded upon a sound, just and reasonable basis. It was contemplated by the legislature that in each city, village and incorporated town in the State the amount of the capital stock of a banking corporation should be fixed at such a figure that the depositors would receive ample protection and those investing their money in the capital stock of the institution would at the same time have an opportunity to receive fair returns upon the investment. Under the provisions of the act it would have been impossible for appellant to organize to do business in the city of Chicago with a capital stock of less than $200,000, and as a general proposition it ought not to be permitted to do indirectly what the statute prohibits it from doing directly. It is true, as appellant contends, that immediately upon the annexation of the village of Morgan Park to the city of Chicago it became a citizen of the city of Chicago and equally amenable with all other citizens of that municipality to the local laws and regulations. It does not necessarily follow from this fact that appellant thereby had the right to remove its place of business to any section of the city of Chicago that it might choose to select. On the organization of appellant, under its charter or contract with the State it was authorized to do business anywhere within the limits of the village of Morgan Park, and the territory within which it was authorized to locate its place of business was not necessarily changed or enlarged by the annexation of the village of Morgan Park to the city of Chicago.

This exact question was raised and determined in *First Nat. Bank of Capitol Hill* v. *Murray,* 212 Fed. Rep. 140, in reference to the right of a national bank to change its location under similar circumstances. In that case the First National Bank of Capitol Hill, Oklahoma, was chartered in 1909 to do business in the village of Capitol Hill, a suburb outside the corporate limits of Oklahoma City, with a capital stock of $25,000. The village of Capitol Hill had less

than 3000 inhabitants. Within a month after the bank had received its charter the village of Capitol Hill was annexed to Oklahoma City, which had a population of over 50,000. The bank thereupon applied to the comptroller for permission to remove its location to the business section of Oklahoma City, which application was refused unless the bank increased its capital stock to at least $200,000, changed its name and agreed to comply with the provisions of the law relating to reserves held by banks in reserve cities, of which Oklahoma City was one. The bank declined to comply with these conditions but removed to the location it desired, and the comptroller brought suit to forfeit the charter of the bank: The United States circuit court of appeals, in affirming the judgment of the district court in forfeiting the charter of the bank, gave the following summary of the United States statutes relating to the situation: "The organization certificate of a national banking association must state the name adopted, which is subject to the approval of the comptroller. It must also state the place where its operations of discount and deposit are to be carried on, and its usual business shall be transacted at an office or banking house in the place so specified. The reserve required to be maintained by a national bank in a non-reserve locality is fifteen per cent of its deposits, while in a reserve city it is twenty-five per cent. Generally a national bank cannot be organized with a capital less than $100,000 nor in a city of more than 50,000 inhabitants with a capital less than $200,000, but with the approval of the Secretary of the Treasury it may, in a place of 3000 inhabitants or less, have a capital of at least $25,000, and in a place of not exceeding 6000 inhabitants a capital not less than $50,000. A national bank may change its name or the 'place' where its operations of discount and deposit are carried on to any other 'place' in the same State not more than thirty miles distant, with the approval of the comptroller, but no such change shall be valid until the comptroller has issued his

certificate of approval." In determining the question involved the court then said, *inter alia:* "We do not think the Capitol Hill bank acquired, through the action of the local authorities, immunity from those requirements of the comptroller which could have been imposed had it first sought a certificate of authority to do business in Oklahoma City. It insists upon carrying its meager equipment, just acquired, into the larger and more important field of action solely because of a local occurrence foreign to the spirit and intent of the Federal statutes and in which no one charged with the administration of those statutes participated. If it should prevail in this, a way is pointed out by which interested persons, advised of impending changes of municipal limits, may evade the commands and prohibitions of Congress on a subject peculiarly within its exclusive jurisdiction. Had the bank sought authority at first to do business in the city on village conditions it would certainly have been refused as contrary to law. It should not be indirectly secured in the way shown. Though the separate identity of the village has been by the action of the local authorities and for local governmental purposes merged in that of the city, the city is not, in the circumstances of this case, the same 'place' as the village, within the meaning of the Federal statutes and the action of the comptroller sought and obtained by the organizers of the bank." The same principle is involved here, and the reasoning and conclusion of that case meet with our approval.

There is no force in appellant's contention that the guaranty of the State and Federal constitutions that the property of the citizen shall not be taken without due process of law would be violated in requiring it to conduct its business within the territory which comprised the village of Morgan Park prior to its annexation to the city of Chicago. When appellant selected the village of Morgan Park as the place within which it desired to transact its business it did so knowing that under the laws of Illinois it

was possible that the village of Morgan Park might be an-
nexed to some other municipality, and when the village was
so annexed to the city of Chicago, appellant, together with
every other institution and individual in the village of Mor-
gan Park, was bound to adjust itself to the new order of
things, to submit to the jurisdiction of that city and com-
ply with its ordinances.  The appellant violated the provi-
sions of its charter when it removed its place of business
from the territory which had comprised the village of Mor-
gan Park to the city of Chicago.

The judgment of the circuit court is accordingly af-
firmed.

*Judgment affirmed.*

FARMER, C. J., and DUNN, J., dissenting.