JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Plaintiff, *v.* MICHAEL WEINSIER, Defendant.

Supreme Court, Special Term, New York County, January 26, 1937.

*John A. Mullen [John A. Mullen* and *Harrison W. Gebhardt* of counsel], for the plaintiff, for the motion.

*Henry D. Levy [Joseph Katz* of counsel], for the defendant, opposed.

FRANKENTHALER, J. This is a motion for summary judgment in an action brought by the Superintendent of Banks to recover the sum of $4,500 assessed against the defendant as the holder of forty-five shares of stock of Globe Bank and Trust Company of the par value of $100 each.

The answer contains various defenses, most of which may be briefly disposed of. The first defense alleges that at the time the Superintendent of Banks took possession of the property and business of Globe Bank and Trust Company it had sufficient assets to pay its creditors in full and that it has enough assets at the present time, " if properly liquidated," to satisfy the claims of its creditors. Accordingly, the defendant charges that the closing of the bank and the levy of the assessment by the plaintiff was the result of a gross abuse of discretion on his part. In so far as this defense is based upon the claim that the Superintendent of Banks improperly took possession of the bank, it is clearly insufficient to

defeat an action thereafter commenced by him to enforce a stockholder's liability for an unpaid assessment. No attempt was made by the bank to contest the Superintendent's act by availing itself of the remedy afforded by section 60 of the Banking Law. Moreover, even if the Superintendent were guilty of an error of judgment or of an abuse of discretion in closing the bank, this would furnish no reason for penalizing depositors and other creditors by denying them the right to resort to the liability imposed upon stockholders by the Constitution as well as by our statutes. To the extent that the defense under consideration is predicated upon the contention that there is no necessity for the assessment, it is sufficient to refer to the opinion of this court, handed down simultaneously herewith, on a motion to dismiss the complaint in an action brought against another stockholder (*Broderick* v. *Heinemann*, 161 Misc. 811), holding that the Superintendent's determination of the necessity for an assessment is conclusive, in the absence of fraud, bad faith or error of law. The defense fails to allege any facts which would deprive the Superintendent's determination of the conclusiveness to which it is ordinarily entitled, and the answering affidavits are equally deficient.

The second defense alleges that if there be any necessity for an assessment, the same is due to the manner in which the Superintendent of Banks conducted and managed the liquidation. This defense is insufficient. (See opinion of this court in *Broderick* v. *Betco Corp.*, 149 Misc. 245, at p. 250; affd., 244 App. Div. 710; affd., 269 N. Y. 642; see, also, *Broderick* v. *Adamson*, 148 Misc. 353, at p. 373.)

The third defense sets forth the pendency of numerous actions and proceedings for the collection of debts due to the bank and alleges that this action is prematurely brought, in view of the impossibility of determining at this time the amount which will ultimately be collected in said actions and proceedings. . It is well settled, however, that it is no defense to an action of this character that the liquidation has not been completed and that assets still remain to be collected. (*Broderick* v. *Betco Corp.*, *supra*, p. 247; *Broderick* v. *Adamson*, *supra*, pp. 372, 373.) In *Broderick* v. *Adamson* (146 Misc. 456) Mr. Justice DORE, now a member of the Appellate Division in this department, said (p. 457): " Section 80 of the Banking Law clearly authorizes enforcement of the assessment by the Superintendent when he determines that the reasonable value of the assets of the bank is not sufficient to pay its creditors in full and the right to enforce is not conditioned by the statute upon prior reduction of the assets to cash."

The fourth defense proceeds upon the theory that the plaintiff improperly took possession of the property and affairs of the bank. As previously pointed out, however, even if the closing of the bank were unjustified, this would be no ground for penalizing depositors and other creditors, in no way responsible for the Superintendent's conduct, by depriving them of the right to resort to the constitutional and statutory liability of stockholders.

The fifth defense will be considered presently. The sixth defense alleges that the plaintiff unlawfully permitted the Manufacturers Trust Company to liquidate the assets of the bank, pursuant to a contract of sale, and that he failed to properly supervise the liquidation and permitted assets to be disposed of at less than their real market value. A similar contract between the Superintendent and the Manufacturers Trust Company entered into in connection with the liquidation of Bank of Europe Trust Company was, however, upheld by this court in *Broderick* v. *Betco Corp.* (*supra*), where the claim that the liquidation had been improperly conducted by the Superintendent was likewise held to constitute no defense to an action of the present character.

We turn now to the fifth defense, which alleges that under the Banking Law each stockholder is liable only for such proportion of any deficit as the number of shares of stock held by him bears to the total number of shares outstanding. It further sets forth that it appears from the face of the complaint that the full amount of the outstanding stock need not be collected in order to satisfy the claims of creditors and that the assessment is, therefore, excessive. Although, as previously stated, the Superintendent's determination of the necessity of an assessment is ordinarily conclusive, it may be attacked for fraud, bad faith or error of law. In *United States* v. *Knox* (102 U. S. 422) the United States Supreme Court held that a stockholder of a national bank, under the Federal statute, was liable only for (p. 425) " such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value," in no event, however, to exceed the par value of his stock. Although the Comptroller's assessments upon stockholders of national banks are conclusive as to the necessity therefor, the court declared that any attempt to assess the stockholders on the theory that solvent stockholders could be made to pay more than their proportion of the deficit, because of the insolvency of others, would be enjoined as legally erroneous. The court said (at p. 425): " Although assessments made by the Comptroller, under the circumstances of the first assessment in this case, and all other assessments, successive or otherwise, not exceeding the par value of all the stock

of the bank, are conclusive upon the stockholders, yet if he were to attempt to enforce one made, clearly and palpably, contrary to the views we have expressed, it cannot be doubted that a court of equity, if its aid were invoked, would promptly restrain him by injunction."

If, under the law of this State, the Superintendent of Banks may enforce the liability of stockholders only to the extent of their proportionate shares of the deficit, the defendant is entitled to resist any attempt on the part of the plaintiff to collect from him an assessment based upon the theory that stockholders are liable, up to the par value of their shares, for unpaid claims of creditors, solvent stockholders being obliged to pay to the extent that others fail to do so. It appears to be fairly clear from the allegations of the complaint that the plaintiff is seeking to hold the defendant for more than the latter's proportionate share of the deficit. Although the pleading does not state the amount of the deficit, the total liabilities, admitted and disputed, appear therefrom to be substantially less than the par value of the outstanding stock, without giving any credit for the value of assets which concededly remain in the Superintendent's possession. The moving affidavit in support of the motion for summary judgment has annexed to it a certificate of the Superintendent stating that the deficit as of June 6, 1932, was determined by him to be $366,222.96, which is less than twenty-five per cent of the par value of the outstanding stock. Although it is stated that the deficit has been increased by reason of the fact that actual recoveries since June 6, 1932, have been about $143,000 less than originally estimated, no effort is made in the affidavits submitted by the plaintiff to show the existence of a deficit for an amount even approaching the total par value of the bank's stock. That the Superintendent is attempting to hold stockholders for considerably more than their respective proportions of the deficit is confirmed by the fact that the briefs submitted by him definitely and frankly proceed upon the theory that each stockholder is liable for the debts of the bank up to the par value of his stock, and not merely for his proportionate share of the deficit. It is, therefore, necessary to consider the extent of liability of stockholders of banks under the law of this State.

Prior to January 1, 1936, section 7 of article VIII of our State Constitution* provided as to stockholders of banks that they " shall be individually responsible to the amount of their respective share or shares of stock * * * for all * * * debts and liabilities of every kind." This is the language of the first constitutional provision on the subject (Const. 1846, art. VIII, § 7), continued

* Repealed by vote of people Nov. 5, 1935.

without change in the Constitutions of 1894 and 1916. The first legislation adopted for the purpose of enforcing the liability of stockholders subsequent to the adoption of the 1846 Constitution was contained in chapter 226 of the Laws of 1849, which provided that stockholders " shall be individually responsible, *equally and rateably* \* \* \* for the amount of such debt or liability \* \* \* to the extent of their respective shares of stock." (Italics the court's.) In 1892 the words " and not one for another " were added immediately following the words " equally and ratably." (Laws of 1892, chap. 689, § 52.) Since that time our statutes governing the liability of stockholders of banks have retained the words " equally and ratably, and not one for another." Section 120 of the Banking Law now in force states that " The stockholders of every bank shall be individually responsible, *equally and ratably and not one for another,* for all contracts, debts and engagements of the bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." (Italics the court's.)

If the rights of the defendant in the present action are governed by the provisions of section 120 of the Banking Law, it seems to be clear that his liability is merely for a proportionate share of any deficit, without regard to the insolvency or financial condition of other stockholders. The words " equally and ratably, and not one for another " permit of no other interpretation. In *United States* v. *Knox (supra)* the Federal statute there under consideration was worded in almost identical language, containing the words " equally and ratably, and not one for another." The United States Supreme Court held that the liability of each stockholder was limited to his proportionate part of the deficit, and that " the insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another " (p. 425). A similar holding was made by our Court of Appeals in *Matter of Hollister Bank* (27 N. Y. 393), under the act of 1849, although it did not contain the words " and not one for another." The court pointed out (pp. 398, 399) that the words " equally and ratably " had the effect of making each stockholder " liable for his equal ratable proportion of the debt," the proportion having " reference to the amount of stock held by each, as compared with the whole stock and the debts." The court's conclusion, it is true, was based, in part, upon the provision of section 16 of the act of 1849, that the unpaid debts were to be apportioned among the stockholders " ratably in proportion to their stock, according to the principles in this act declared." Although the present statute contains no language similar to that found in section 16 of the 1849

statute, the words " and not one for another," added in 1892, clearly have the same effect and were obviously intended to protect stockholders from being compelled to make payments which should have been made by other stockholders. The language of section 120 of the Banking Law of our State is practically identical with that contained in similar statutes of many other States. These have been uniformly interpreted as imposing upon stockholders liability for only their proportionate part of the total deficit. (*Howarth* v. *Angle,* 162 N. Y. 179, 191, 192; *Coyle* v. *Taunton Safe Deposit & Trust Co.,* 216 Mass. 156; 103 N. E. 288; *Davis* v. *Moore,* 130 Ark. 128; 197 S. W. 295; *Maine Trust and Banking Co.* v. *Southern Loan and Trust Co.,* 92 Me. 444, 453; 43 A. 24; Morse Banks and Banking [6th ed.], vol. 2, § 694.)

The plaintiff points out, however, that section 7 of article VIII of the Constitution does not use the words " equally and ratably, and not one for another," and imposes an unqualified liability upon each stockholder for the unpaid debts of a bank up to the par value of the stock held by him. He accordingly contends that if section 120 of the Banking law is interpreted as limiting the liability of stockholders to their porportionate shares of the total deficit, the statute is unconstitutional as an unauthorized and unwarranted legislative limitation upon a liability imposed in the Constitution. Although the variance between Constitution and statute has persisted since the year 1849, a period of almost ninety years, there appears to be only one case in this State in which any reference to this conflict has been made, viz., *Matter of Hollister Bank (supra),* decided in 1863 under the act of 1849. The 1849 statute provided for the appointment of a receiver in case of the insolvency of a banking corporation, for the appointment of a referee to apportion the debts among the stockholders " ratably in proportion to their stock," and for the entry of judgment against the stockholders for the amounts assessed against them upon the confirmation of the referee's report. In the case cited an apportionment upon all the stockholders had been made and confirmed and judgment entered. The receiver then applied for a second apportionment, basing his application partly upon the fact that certain stockholders assessed under the former apportionment had failed to make payment. The Court of Appeals declared that the act of 1849 imposed a liability upon each stockholder for only his proportionate share of the deficit and made no provision whatsoever for " the contingency of the failure, or inability of a portion of the stockholders to respond to the assessment, although it could hardly have escaped the consideration of the Legislature " (p. 397). The court accordingly held that only one apportionment was contemplated by the statute

and reversed the order directing a second apportionment. Although the court expressly recognized that the statutory liability was more limited than that imposed in the Constitution, it, nevertheless, took the position that the receiver's attempt to obtain a second apportionment was based upon the statute and that his rights were, therefore, controlled by the statute. The court said (pp. 394, 395): " Section 7 of article 8 of the Constitution of this State declares that ' the stockholders in every corporation and joint stock association for banking purposes, issuing bank notes or any kind of paper credits to circulate as money, after the first day of January, 1850, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind, contracted after the said first day of January, 1850.' I do not doubt that it was or would be competent, under this clause of the Constitution, for the Legislature to provide for the enforcement, by action or otherwise, of a responsibility by every stockholder of any such corporation or association issuing bank notes, not merely for a ratable proportion, but for the full amount of any debt of the association contracted since January 1st, 1850, to the extent of his stock. Whether, however, the constitutional provision of itself creates a liability upon which an action might have been maintained against any or all the stockholders of such an association, if the Legislature had passed no act to carry out that provision, or whether such liability exists, notwithstanding or independent of the act passed to enforce the responsibility of stockholders in these associations, are questions with which we are not at present concerned. The Legislature, on the 5th of April, 1849, passed an act to enforce the responsibility of stockholders in certain banking corporations and associations, as prescribed by the Constitution. The proceedings now brought before us were taken under this act, and the only question raised by this appeal is, whether they are conformable to it, or authorized by it. This question is to be decided mainly upon consideration of the statute itself. The provision in the Constitution will, no doubt, show what its framers designed that the Legislature should accomplish; but that design, however manifest, cannot be invoked to supply obvious deficiencies in the statute." The opinion of the court concluded with the following language (p. 400): " Upon the whole, I am of opinion that the liability imposed by this statute upon the stockholders of banking associations, is a several liability for a ratable and equal share of the debts, in proportion to the whole debts and the whole capital stock, and not a liability to each creditor until he is paid, limited only by the amount of stock held by the stockholder, and

that the statute gives no authority or jurisdiction to make more than one judgment, the first apportionment and judgment remaining unreversed."

For reasons which will presently appear, this court is of the opinion that *Matter of Hollister Bank (supra)* is not controlling here. However, before distinguishing the case, it is necessary to consider whether the provisions of section 7 of article VIII of the Constitution are self-operative, that is, whether they impose the liability therein referred to upon each stockholder without the enactment of legislation in execution or enforcement of the constitutional liability. This question was expressly left open in *Matter of Hollister Bank (supra,* p. 395): " Whether, however, the constitutional provision of itself creates a liability upon which an action might have been maintained against any or all the stockholders of such an association, if the Legislature had passed no act to carry out that provision, or whether such liability exists, notwithstanding or independent of the act passed to enforce the responsibility of stockholders in these associations, are questions with which we are not at present concerned."

The question whether a constitutional provision imposing liabilities is self-executing is to be determined primarily by ascertaining its intention as disclosed by the language used. " Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed." (12 C. J. 729.) In *Bernheimer* v. *Converse* (206 U. S. 516) the United States Supreme Court adopted the view of the Minnesota courts that a provision in the Constitution of that State that " each stockholder * * * shall be liable to the amount of stock held or owned by him " was self-executing, and (p. 529) that " a remedy might have been worked out in the courts of equity in the State." In *Converse* v. *Hamilton* (224 U. S. 243) the Supreme Court said of the same constitutional provision (p. 253): " The provision is self-executing, and under it each stockholder becomes liable for the debts of the corporation in an amount measured by the par value of his stock." Various Minnesota decisions are cited for this proposition, a reference to one of which will suffice. In *Willis* v. *Mabon, St. Paul Sanitation Co.* (48 Minn. 140; 50 N. W. 1110) the court declared (p. 150): " A Constitution is but a higher form of statutory law, and it is entirely competent for the people, if they so desire, to incorporate into it self-executing enactments. These are much more common than formerly, the object being to put it beyond the power of the Legislature to render them nugatory by refusing to enact

legislation to carry them into effect. Prohibitory provisions in a Constitution are usually self-executing to the extent that anything done in violation of them is void. But instances of affirmative self-executing provisions are numerous in almost every modern Constitution. For instances of this, see *State* v. *Weston,* 4 Neb. 216; *Thomas* v. *Owens,* 4 Md. 189; *Reynolds* v. *Taylor,* 43 Ala. 420; *Miller* v. *Marx,* 55 Ala. 322; *People* v. *Hoge,* 55 Cal. 612. * * * The question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature,— does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts. * * * (p. 153). Much stress is laid upon the fact that this provision contains no remedy for enforcing the liability, as indicating that it was not intended to be self-executing. We fail to perceive any force whatever in this line of argument. The maxim, *ubi jus ibi remedium,* is as old as the law itself. * * * Hence, in the present case it was not necessary that the Constitution should have expressly given a remedy by which a creditor of the corporation might enforce the liability of a stockholder. If it in fact created such a liability of the latter in favor of the former, there would not be the least trouble in framing a proper complaint in an action to enforce it."

In *Western Pacific Railway Co.* v. *Godfrey* (166 Cal. 346; 136 P. 284) a provision in the Constitution of that State that " each stockholder * * * shall be individually and personally liable " for his proportion of the debts was likewise held to be self-executing. In *Dupee* v. *Swigert* (127 Ill. 494; 21 N. E. 622) the language of the Illinois Constitution that "Every stockholder * * * shall be individually responsible and liable to its creditors * * * to an amount equal to his or her respective shares " was held to be (p. 505) " a self-executing provision " which " needs no legislation to enforce it." Other cases to the same effect are *Jones* v. *Jarman* (34 Ark. 323); *Union National Bank of Omaha* v. *Halley* (19 S. D. 474; 104 N. W. 213); *Eau Claire National Bank* v. *Benson* (106 Wis. 624; 82 N. W. 604).

The provision of section 7 of article VIII of the Constitution of this State that stockholders of banks " shall be individually responsible to the amount of their respective share or shares of stock * * * for all * * * debts and liabilities of every kind " is positive in its language and contains nothing from which it may be gathered that it was contemplated that legislation would be necessary to render the provision effectual. The language is practically identical with that considered in the cases previously referred to and is, in this court's opinion, self-executing. Various decisions to the contrary are easily distinguishable. In *Marshall* v. *Sherman* (148 N. Y. 9) our Court of Appeals held that a provision of the Constitution of the State of Kansas relating to liability of bank stockholders was not self-executing and of itself created no liability whatever (p. 18). However, the provision in question read as follows (p. 16): " Dues from corporations *shall be secured* by individual liability of the stockholders to an additional amount equal to the stock owned by such stockholders, *and such other means as shall be provided by law.*" (Italics this court's.) The words " shall be secured " and " such other means as shall be provided by law " indicated that it was contemplated that legislation would be necessary to carry out the constitutional intent (p. 18): " The language used plainly contemplates that legislation was necessary in order to make it effectual. It was intended simply to confer authority upon the Legislature of that State to legislate upon the subject, and perhaps it imposed upon that body the duty of securing the debts of corporations by imposing upon the stockholders an individual liability, and by such other means as in its discretion it should deem proper, always limiting such power and discretion by the provision that each stockholder should be made liable to an amount equal to the stock held by him." The difference between the language of our Constitution and that of the Kansas Constitution is apparent. In this connection it is to be noted that even the language of the Kansas Constitution was held to be self-executing by the United States Supreme Court, which thus differed with our Court of Appeals in the construction of that Constitution. (*Whitman* v. *Oxford National Bank*, 176 U. S. 559.) In *Barnes* v. *Wheaton* (80 Hun, 8) the court was called upon to decide the effect of the following provision of the Ohio Constitution: " Dues from corporations *shall be secured* by such individual liability of the stockholders * * * *as may be prescribed by law;* but in all cases each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock." (Italics this court's.) The court held that this language was not self-executing and that

its purpose was to confer upon the Legislature the power and impose upon it the duty of securing dues from corporations, but limiting such power and discretion by a provision for at least a double liability of stockholders. Obviously, the words " shall be secured by such individual liability * * * as may be prescribed by law " justified the court's construction that legislation was contemplated. No such language is contained in section 7 of article VIII of the Constitution of this State. The case of *Morley* v. *Thayer* (3 Fed. 737) is likewise distinguishable for the reason that the language of the Kansas Constitution, which was held to be inoperative without legislation, was identical with that contained in the Ohio Constitution, previously referred to. In *French* v. *Teschemaker* (24 Cal. 518) a provision of section 36 of article 4 of the California Constitution that each stockholder " shall be individually and personally liable " for " his proportion " of the corporate debts and liabilities was held to be inoperative without legislation, because a contrary construction would render meaningless section 32 of the Constitution, which provided for the enactment of legislation in language similar to that of the Ohio and Missouri Constitutions, and for the further reason that there was nothing in section 36 to show what the words " his proportion " meant. No case has been called to the court's attention in which it has been held that language identical with or similar to that contained in section 7 of article VIII of our Constitution is not self-executing.

It does not necessarily follow, however, from the fact that our constitutional provision is self-executing, that the right to enforce it is vested in the Superintendent of Banks. In the absence of a constitutional or statutory provision conferring the right of enforcement upon the latter, the right would seem to belong to the creditors, to be exercised by them in a representative action. Prior to 1892 the right to enforce the liability of bank stockholders had been conferred by the Legislature upon receivers appointed for insolvent banks. Between 1892 and 1897 there was no express provision authorizing any particular individual to enforce the liability (*Hirshfeld* v. *Bopp*, 145 N. Y. 84, 92; *Barnes* v. *Arnold*, 23 Misc. 197, 202; affd., 45 App. Div. 314), and it was accordingly held that the liability could be enforced only by creditors in a representative action. (*Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166, 178, 179, 184, 185.) In *Willis* v. *Mabon* (*supra*) the language of the court (p. 154) indicates that, in the absence of legislation, the right of enforcement would belong to creditors of the corporation, for whose benefit the constitutional provision was adopted. Similarly, in *Converse* v. *Hamilton* (*supra*, at p. 253), the United States Supreme Court said that the self-executing liability " is not to the corporation but to the

creditors collectively," and in *Bernheimer* v. *Converse* (*supra*), the same court (at p. 529) declared that, in the absence of legislation, " a remedy might have been worked out in the courts of equity in the State."

It is, therefore, necessary for the Superintendent of Banks, in order to enforce the liability imposed upon bank stockholders in the Constitution, to point to a statute which expressly gives him that right. Section 120 of the Banking Law is of no avail to him since the liability thereby imposed is, as previously pointed out, much narrower than that declared in the Constitution and he may not rely on that part of the section which gives him the right to sue and, at the same time, disregard the measure of recovery set forth in the very same section. (*Matter of Hollister Bank, supra.*) However, the Superintendent's right to enforce the liability of stockholders is not dependent upon section 120. The Banking Law contains a separate section which, in this court's opinion, gives to the Superintendent the right to enforce the liability of bank stockholders imposed in the Constitution. Section 80 provides that: " *Whenever a liability of stockholders for the amount of their respective shares of any such corporation exists*, and the Superintendent has duly taken possession of the property and business of such corporation, \* · \* \* *he* may enforce the individual liability of such stockholders in whole or in part. \* \* \* In case any such stockholder shall fail or neglect to pay such assessment within the time fixed in said notice, *the Superintendent* shall have a cause of action, in his own name as Superintendent of Banks, against such stockholder \* \* \* either severally or jointly with other stockholders of such corporation, for the amount of said unpaid assessment or assessments." (Italics the court's.) It is to be noted that the right of enforcement thus conferred upon the Superintendent may be exercised by him " whenever a liability of stockholders *for the amount of their respective shares* of any such corporation exists." (Italics the court's.) This language would seem to refer to the constitutional liability, rather than to the statutory liability, imposed by section 120, which is limited to the stockholders' proportionate share of the unpaid debts and does not extend necessarily to the full amount of their respective shares of stock. No reference to section 120 or to the limited liability therein imposed is to be found in section 80. The language referred to is at least as applicable to the liability declared in the Constitution as it is to that specified in section 120.

It may, perhaps, be argued that the language of another portion of section 80 indicates, however, that said section confines the Superintendent's right of enforcement to the limited liability imposed by section 120. The language in question requires the

Superintendent to state, in his demand upon stockholders, " *the equal and pro rata share assessed* against each stockholder for each share of stock." (Italics the court's.) As the opening sentence of section 80 authorizes the Superintendent to " enforce the individual liability of such stockholders in whole or in part," the reference to an " equal and *pro rata* " assessment may have been intended to cover a situation where the Superintendent's assessment was for only part of the stockholder's liability. In such a case each stockholder would be liable for only the same proportion of the full value of his stock as in the case of the other stockholders, and the only purpose of the words " the equal and *pro rata* share " may have been to prevent the Superintendent from assessing some stockholders for greater proportions of their stock than others. Although it is also possible to construe the reference in section 80 to " the equal and *pro rata* share " as intended to restrict the assessment to the proportionate liability imposed in section 120 of the Banking Law, it is well settled that where a statute is capable of two constructions, one of which would render it unconstitutional and the other constitutional, the latter is to be adopted. (*People ex rel. Bridgeport Bank* v. *Feitner*, 191 N. Y. 88, 97, 98; *Dollar Co.* v. *Canadian C. &. F. Co.*, 220 id. 270, 275.) Applying this principle, the court reaches the conclusion that the words " equal and *pro rata* share," as used in section 80, are to be construed as intended merely to prevent the Superintendent, in the case of a partial assessment, from assessing some stockholders for greater proportions of their stock than others, and as having no application in the case of an assessment for the full amount of each stockholder's liability.

It is to be noted that section 80 is complete within itself. It makes no reference to section 120 or to any other section of the Banking Law, and it contains no language to indicate that the reference therein to an assessment for each stockholder's " equal and *pro rata* share " was intended to reduce the stockholders' liability below that imposed in the Constitution. Such an attempt would clearly be invalid for " the Constitution permits no legislative limitation upon the individual responsibility of stockholders " (*Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260, 263; see, also, *Broderick* v. *Adamson* [*Gordon*], 270 id. 228, 232), and it is well established that every presumption is in favor of the validity of a statute, and that every effort will be made to give its language such a meaning that the act may stand without conflict with the fundamental law.

Nor may it be successfully argued that the opening words of section 120 militate against the conclusion thus arrived at. That section begins as follows: " The rights, powers and duties of stockholders of banks shall be as prescribed in the General Corporation Law and the Stock Corporation Law; but the individual liability of such stockholders for the contracts, debts, and engagements of the bank and the time within which an action may be instituted to enforce such liability shall be governed exclusively by the provisions of this section and section eighty of this chapter." Prior to the enactment of this provision, it had been held that the language of section 55 of the Stock Corporation Law, prescribing the conditions under which an action might be brought against a stockholder, was applicable to banking as well as to other corporations. (See *Gause* v. *Boldt*, 49 Misc. 340, at pp. 343, 344; see, also, *Hirshfeld* v. *Bopp*, 145 N. Y. 84, 93.) The opening sentence of section 120 of the Banking Law seems to have been enacted only for the purpose of excluding other statutes, such as the Stock Corporation Law, from consideration in determining the *liability* of *bank* stockholders and the time within which an action against them might be brought. There is nothing in said sentence to indicate that the Legislature intended to exclude the provisions of the Constitution in regard to the liability of bank stockholders, and the presumption, in the absence of clear evidence to the contrary, is that the Legislature did not *deliberately* intend to violate the Constitution by *expressly excluding its provisions from consideration* in determining the liability of bank stockholders. (*Sun Publishing Co., etc., Assn.* v. *Mayor*, 8 App. Div. 230, 250, 251; affd. 152 N. Y. 257.) Furthermore, the opening sentence of section 120 does not state that the liability of stockholders under section 80 shall be governed or affected by the provisions of section 120. Nor does it purport in any way to modify the provisions of section 80. Even if it did, it would have to be disregarded as unconstitutional. (See *Broderick* v. *Aaron* [*Kornberg*], *supra*, at p. 263.) In any event, section 80, as previously observed, is complete within itself, making no reference whatsoever to section 120, and its provisions are, therefore, not affected by section 120, which is clearly unconstitutional in its limitation upon the liability of bank stockholders. (See *Broderick* v. *Adamson* [*Gordon*], *supra*, at p. 32; *Broderick* v. *Aaron* [*Kornberg*], *supra*, at p. 263.)

The situation would be anomalous, indeed, if the view were taken that the constitutional liability, though self-executing, could be enforced only by the bank's creditors in a representative action. The result would be that the Superintendent of Banks would be the only person authorized to enforce the statutory liability imposed

in section 120, and the creditors would be the only ones permitted to sue for the difference between the statutory and the constitutional liability. Apart from the fact that there would thus be a splitting of causes of action against the stockholders and that the latter would be subjected to two suits, there is the more serious objection that many practical difficulties would be presented. For example, the creditors would probably be unable to sue until the Superintendent of Banks had completed his liquidation, at which time the Statute of Limitations might have run against them. Until the Superintendent's determination as to the amount of the assessment permitted by section 120, the creditors would be unable to determine the amount for which they could properly sue, viz., the difference between the statutory and the constitutional liabilities. Any attempt on their part to include within the amount sued for any part of the amount for which the Superintendent of Banks might assess the stockholders under section 120, would constitute a violation of that part of the section which gives the Superintendent the exclusive right, in the first instance, to institute actions to enforce the statutory liability of stockholders. These practical considerations illustrate the chaotic results which would flow from a holding that the constitutional liability may be enforced only by the bank's creditors and that the Superintendent's right of enforcement is confined to the statutory liability declared in section 120.

For the reasons indicated the court reaches the conclusion that section 80 of the Banking Law authorizes the Superintendent to enforce the self-executing provision as to stockholders' liability contained in the Constitution. The decision in *Matter of Hollister Bank* (*supra*) does not apply, for in that case the attempt to obtain a second apportionment was predicated upon the very statute which limited the constitutional liability. Here the Superintendent may proceed under a statute (§ 80) which does not attempt to reduce that liability and he may disregard section 120 which does fix a narrower measure of recovery.

In concluding, it may be well to refer briefly to the defendant's contention that the action has been improperly brought at law, instead of in equity. There appears to be no good reason for requiring the plaintiff to sue in equity. He may obtain adequate relief in a court of law. The statute itself, in its amended form, permits suits to be brought against stockholders "either severally or jointly with other stockholders." (Banking Law, § 80.) In *Broderick* v. *Betco Corp.* (*supra*) this court held that the action had been properly brought at law and that no resort to equity was necessary. This holding was affirmed by the Appellate Division (244 App.

Div. 710) and the Court of Appeals (269 N. Y. 642). Although the deficit in the case cited exceeded the total par value of the outstanding stock and each stockholder was, therefore, assessed the total par value of his stock, there appears to be no justification for a contrary holding in a case such as this where, with a deficit less than the total par value of the stock, each stockholder is assessed the full par value of his stock. In the court's opinion, the action is properly brought at law. (See *Mosler Safe Co.* v. *Guardian Trust Co.*, 208 N. Y. 524, 530; *Broderick* v. *American General Corp.*, 71 F. [2d] 864, at pp. 867–870; *Van Tuyl* v. *Sullivan*, 173 App. Div. 391, 394, 395.) Even if the complaint should have been framed in equity rather than at law, this would not require its dismissal or otherwise avail the defendant. (*Wainwright & Page* v. *Burr & McAuley*, 272 N. Y. 130; *Abbey* v. *Wheeler*, 170 id. 122, 127.)

As the answering affidavits on the present motion raise no triable issue, the plaintiff is entitled to summary judgment for the amount of the assessment, less the dividends withheld from the defendant as a creditor of the bank. Settle order.