[Civil No. 2679. Filed February 28, 1928.]

[264 Pac. 687.]

R. N. FREDERICKS, Appellant, v. A. T. HAMMONS, as State Superintendent of Banks for the State of Arizona, and as Receiver of THE PRESCOTT STATE BANK, a Corporation, Insolvent, Appellee.

Mr. J. E. Russell, for Appellant.

Mr. John A. Ellis, for Appellee.

ROSS, C. J.—This is an action to enforce a stockholder's double liability. The Prescott State Bank, an insolvent, on November 25th, 1925, was taken pos-

session of by A. T. Hammons, state superintendent of banks. It was incorporated in 1916 with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each, all issued and outstanding. The defendant, R. N. Fredericks, at the time the bank superintendent took over the bank for liquidation, was the owner of 289 shares of such stock. In the insolvency proceeding, upon the petition of the superintendent of banks, on January 13th, 1926, the court, after notifying the defendant, and all other persons interested, investigated the assets and liabilities of the bank and determined that it was insolvent as of the date the superintendent took it over, and found that its liabilities exceeded its assets by more than its entire capital stock of $100,000, and that it was necessary to collect from the stockholders their constitutional and statutory liability to meet its obligations to its creditors, and in such proceeding the superintendent of banks was ordered to enforce the double liability of the stockholders, including defendant, to the full extent of their stock.

On May 26th, 1926, in obedience to the court's order, the superintendent of banks instituted this suit setting up the facts above stated, and others, as his cause of action against defendant, Fredericks. At the same time he caused a writ of attachment to be issued and levied upon certain property of defendant; also a writ of garnishment was issued and served upon certain creditors of defendant. The defendant filed motions to dissolve the two writs on the ground that the debt sued for was not of the character authorizing or permitting attachment or garnishment, in that the demand was not based on a contract, express or implied, for the direct payment of money. This motion was denied, and its denial is assigned as error.

By demurrer defendant made the point that the complaint was bad, as not being in the nature of a

creditor's suit, but a direct suit to collect the liability for the benefit of the creditors. The overruling of the demurrer is assigned as error.

It is next claimed the enforcement of the double liability against defendant impairs the obligations of contract, in violation of section 10 of article 1 of the Constitution of the United States. We will take up these propositions in their order.

This assignment involves the ruling on defendant's motion to dissolve the writs of attachment and garnishment. The use of attachment by plaintiff to secure and obtain the fruits of his judgment, in case he is successful, is authorized in certain kinds of debts or demands whenever overdue by paragraph 1393, and when not due by paragraph 1396, of the Civil Code of 1913. One of the grounds upon which attachment may be issued is when the action is upon a "contract, express or implied, for the direct payment of money" made or payable in the state and not adequately secured. Subd. 1, par. 1393, *supra.* It was upon this ground the attachment was procured. The defendant contends that a stockholder's double liability does not arise out of contract, but is statutory, and that at all events his liability is not for the direct payment of money. The first contention is not supported either by the text-books or the decisions. According to these authorities, the stockholder's liability is contractual. The constitutional provision (§ 11, art. 14) at the time the defendant acquired the stock was:

"The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock."

This definitely fixed defendant's obligations. In accepting the stock he impliedly agreed to abide by such law. It became and was a part of the contract he entered into and he voluntarily gave his consent to be bound thereby. 6 Fletcher, Cyc. Corp., § 4176; 1 Michie, Banks and Banking, § 47. The recent case of *Aronson & Co.* v. *Pearson,* 199 Cal. 286, 51 A. L. R. 1380, 249 Pac. 188, sets forth the reasons for holding stockholder's liability is founded upon contract, as follows:

"The same principle is expressed in Thompson on Corporations (2d Ed.), § 4790, as follows:

" 'This liability is not imposed upon stockholders without their consent, for the reason that, where such a statute or constitutional provision exists when a person becomes a stockholder in a corporation, he impliedly at least agrees to become liable to the extent prescribed. In other words, such a provision, under familiar principles, becomes incorporated in, and a part of, the undertaking of the stockholder, and is therefore said to be the result of his stockholder's agreement, and is contractual in its nature.'

"The constitutional and statutory provisions relating to the liability of stockholders become essential terms of the subscription agreement of a stockholder as fully as if they were set forth at length therein. By accepting ownership of stock in a corporation, the stockholder in effect offers to make payment, to the extent of his stockholder's liability, to any person who may extend credit to the corporation during the period of his ownership. Whenever, during such ownership, any person so extends credit to the corporation, 'the offer and the act (of extending credit) combined make a complete contract' between the stockholder and the creditor."

In *Adams* v. *Clark,* 36 Colo. 65, 10 Ann. Cas. 774, 85 Pac. 642, it is said:

"This liability, unlike the liability imposed by the statute upon directors or officers of a corporation for its debts, because of their fraud or negligence in the management of the affairs of the corporation, is not

penal in its nature—to be regarded as a purely statutory liability—it is a liability voluntarily assumed by the act of becoming a stockholder, and an obligation thus assumed is purely contractual, contains all the elements of a contract, and is to be enforced as such.''

This law is so well settled that we deem it unnecessary to cite other authority.

The next contention, to the effect that the liability of a stockholder is not for the direct payment of money, and therefore not within the terms of the statute authorizing an attachment to secure any judgment that might be obtained, is not so easily disposed of. The difficulty grows out of the meaning that should be given to the word ''direct.'' The phrase of which this word is a part is common to the attachment law of California, Montana and Oregon. Section 537, Code Civ. Proc. Cal.; § 890, Code Civ. Proc. Mont.; § 295, Laws Or. 1920.

In our somewhat cursory examination of the decisions from Oregon, we find no case construing the phrase or the word ''direct'' contained therein. The courts of California and Montana have not had the same smooth sailing. In the early case of *Hathaway* v. *Davis*, 33 Cal. 161, its meaning first came into question. In that case the court admitted its inability to divine its meaning when considered alone, but construed it in connection with subdivision 1 of section 538 of the same Code (the same as our paragraph 1394), which requires the plaintiff to be able to swear that the defendant is indebted to him in a certain sum, specifying the amount, to exclude causes of action for unliquidated sums of money and to include collateral contracts holding that such contracts or promises may be ''for the direct payment of money,'' as well as the principal promise.

Since the decision in the Hathaway case the construction of the phrase therein announced has been

followed in several cases. It is said in 3 Cal. Jur. 416, § 12:

"In the application of this rule of construction it is held that a bail bond, an official bond, an appeal bond, and a contract of guaranty, are contracts 'for the direct payment of money.' *Likewise, an action against a stockholder to recover unpaid installments upon a subscription to the stock of a corporation;* or to recover his proportion of a debt of the corporation, is one upon a contract 'for the direct payment of money.' And the same is true of an action by a county to recover a license tax." (Italics ours.)

See, also, *Kennedy* v. *California Savings Bank,* 97 Cal. 93, 33 Am. St. Rep. 163, 31 Pac. 846; *Aronson & Co.* v. *Pearson, supra.*

In *Whittier* v. *Visscher,* 189 Cal. 450, 209 Pac. 23, the court, in discussing the nature of a stockholder's liability, said:

"While it is true that it is the authority of the statute which creates the general liability of the stockholder on the corporation indebtedness, in a case like this, it is the contract of the corporation which creates the indebtedness. In assuming the status of a stockholder each owner of shares of stock in effect empowers the corporation by its act to bind him by its obligations. It is a separate independent liability, but it is created by and arises on the contract. There is nothing that we can discover in the creation of the stockholder's liability or in its enforcement, where it arises on a contract of the corporation, to differentiate it from a direct contract by the individual so far as concerns the remedy of the parties."

The Montana courts have taken a different view of the phrase and the meaning to be given to the word "direct." In *Ancient Order, etc.,* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197, decided in 1903, the court held the phrase meant that the auxiliary remedy of attachment could be used when the contracts sued on

"are such only as require the payment unconditionally and absolutely of a definite sum."

In *Wall* v. *Brookman,* 72 Mont. 228, 232 Pac. 774, an action against a cosurety for contribution, it was held the contract was for the direct payment of money, and in the course of the opinion the court made the following comment:

"It is probable that originally we borrowed the phrase 'for the direct payment of money' from California. The Supreme Court of California first had trouble with it in 1867 (*Hathaway* v. *Davis,* 33 Cal. 161), and it appears to have been bothersome ever since (3 Cal. Jur. 415).

"The history of the phrase as it appears in our statute, with particular reference to the mischievous word 'direct' (the elimination of which from the statute would be beneficial, as it seems to function chiefly as a trouble maker) is covered fully in the Sparrow Case, *supra.* In that case, after an exhaustive analysis of the authorities then available (and upon this point no new light appears), this court concluded that contracts contemplated by our statute as it then existed—and it is the same now—'are such only as require the payment unconditionally and absolutely of a definite sum.' "

In *Home State Bank* v. *Swartz,* 72 Mont. 425, 234 Pac. 281, the plaintiff bank sued the defendant upon a liability incurred by him as one of its stockholders, conformably to an assessment levied to make good an impairment of the capital stock of the bank, and it was there held that the cause of action was contractual and for the direct payment of money. It was said:

"Section 9256, R. C. 1921, providing when an attachment may issue, is similar, in so far as the issues in this case are concerned, to section 537 of the Code of Civil Procedure of California. In that state it has been held directly that attachment will lie as upon an implied contract for the direct payment of money, in a suit to collect an assessment made against a stockholder upon his statutory liability. *Marshall* v.

*Wentz,* 28 Cal. App. 540 [153 Pac. 244], *supra.* This holding was foreshadowed by the well-considered case of *Kennedy* v. *California Savings Bank,* 97 Cal. 93, 33 Am. St. Rep. 163, 31 Pac. 846.''

In *Muri* v. *Young,* 75 Mont. 213, 245 Pac. 956, the question was identical with the one we have here and the holding, based solely on the ground that the stockholder's liability was secondary and not primary, was that the contract was not for the direct payment of money. The case is differentiated by the court from the Home State Bank case, in that it was to enforce the double liability, whereas in the latter the liability arose from an assessment made under the statute to repair the corporation's capital stock. Of course there is a difference, but the source of both liabilities is the same and can be exacted or enforced for the protection of the corporation's assets and its patrons upon the same general principles. One is as much a secondary obligation as the other. The duty to pay springs from like causes.

But however that may be, we feel constrained to follow the California decisions for two reasons: (1) We are quite certain we borrowed our paragraph 1393 (or the part here involved), as we did many of our laws, from that state, and with the construction placed thereon by the courts of that state; (2) we believe such construction comports more nearly with the spirit of our attachment law than the Montana construction. Paragraph 1393, *supra,* authorizes the issuance of the writ in four different classes of cases: (1) When it is of the class we are here considering; (2) ''when any suit be pending for damages . . . ''; (3) ''in an action upon a contract, express or implied'' against a nonresident or a foreign corporation; and (4) ''in an action upon a judgment of any state or territory in the United States, or the District of Columbia.''

This legislation is a manifestation of a purpose to allow the creditor, actual or contingent, the broadest opportunity to secure by attachment the payment of any judgment he may obtain. He is given the right to attach for unliquidated damages, under certain conditions, for debts arising out of a contract, express or implied, and in an action upon a judgment, and under paragraph 1396 on debts not due. Why should the legislature refuse to a plaintiff the privilege of protecting his judgment in the same way when the debtor happens to be a surety or a guarantor, or when the liability is secondary? We can see no reason for such discrimination and we hardly think the legislature, when it used the word "direct," intended to give it that force or effect. We think the reasonable, consistent construction of the phrase "for the direct payment of money," when considered in connection with the context and its purpose, is that it was intended to exclude actions for unliquidated sums of money (such being provided for by subd. 2 of par. 1393) and not to exclude collateral contracts, since such contracts may be for the direct payment of money as well as the principal promise.

"It is sufficient that the contract furnishes the measure of liability or the information from which the amount due can be ascertained." 3 Cal. Jur. 416, § 12.

What we have said concerning the writ of attachment applies to the writ of garnishment. The statute (subd. 1 of par. 1427, Civ. Code) authorizes the issuance of a writ of garnishment where an original attachment has been issued. It follows that the refusal of the court to dissolve the writs of attachment and garnishment was not error.

The defendant bases his contention that demurrer should have been sustained upon the language, or part of the language, of the statute authorizing the

superintendent of banks to bring this suit. Such officer, by section 23 of chapter 31 of the Laws of 1922, is authorized to enforce the stockholder's liability "by an action in the superior court in the nature of a creditor's suit or by any other available action." A creditor's suit is not the only remedy he may invoke. We see no reason why a complaint consisting of a concise statement of the facts constituting plaintiff's cause of action, as the statute provides (par. 419, Civ. Code), is not sufficient. This manner of stating a cause of action by a receiver under section 23, chap. 31, *supra,* has been recognized by us as a compliance with the law in *Cowden* v. *Williams,* 32 Ariz. 407, 259 Pac. 670. The ruling on demurrer was proper.

Under the facts in this case it is clear that the enforcement of double liability of a stockholder does not impair the obligations of contract. The Prescott State Bank was incorporated in 1916 and after statehood, and for that reason the rule announced in *Hammons* v. *Watkins, ante,* p. 76, 262 Pac. 616, and *Herndon* v. *Hammons, ante,* p. 88, 262 Pac. 620, has no application. In those cases the defendants became stockholders in banking concerns organized during territorial days and when the law in express terms exempted their private property from the payment of the debts of the corporation, and we held that, inasmuch as section 1 of article 22 of the state Constitution provided that "No . . . contracts . . . existing at the time of the admission of this state into the Union, shall be affected by a change in the form of government," the power to alter or change the articles of incorporation, and thereby their contracts, was denied. When the Prescott State Bank was incorporated, our state Constitution, section 2 of article 14, provided:

"Corporations may be formed under general laws, but shall not be created by special acts. Laws relating to corporations may be altered, amended, or re-

pealed at any time, and all corporations doing business in this state may, as to such business, be regulated, limited, and restrained by law.''

And by chapter 31, section 23, *supra,* the legislature of 1922 provided for the enforcement of such liability as follows:

''The stockholders of every banking corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements, of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares of stock, and in case of the dissolution or liquidation of any bank under the provisions of this act or under the laws heretofore in force, the constitutional and statutory liability of the stockholders must be enforced for the benefit of the creditors of such bank by the superintendent of banks or by any receiver heretofore appointed under the provisions of section 294, title IV, Revised Statutes of Arizona, 1913, Civil Code, by an action in the superior court in the nature of a creditors' suit or by any other available action.''

This liability is also contained in section 11 of article 14 of the state Constitution.

Defendant, however, claims that these constitutional and statutory provisions do not apply to him for the reason that the corporation commission of this state issued to the Prescott State Bank, in 1916, a charter containing a provision that ''the private property of the stockholders of this corporation shall be exempt from the debts of the corporation,'' and for the further reason that the constitutional provision (§ 11, art. 14) is not self-executing. Both these contentions are without merit. The corporation commission was without power to nullify the Constitution of the state, and, of course, did not intend to do so. It simply approved, as the law required, articles of incorporation presented to it for filing.

It is the settled rule in this country that a corporation accepts its charter subject to the laws in effect at the time of its issuance. If such laws provide that "laws relating to corporations may be altered, amended, or repealed at any time," the charter is accepted subject to such provisions, and therefore the legislative act of 1922 providing for double liability was not violative of any provision of the federal Constitution. *Allen* v. *Scott,* 104 Ohio St. 436, 135 N. E. 683.

Besides, there is no doubt that section 11 of article 14 of the state Constitution is self-executing and itself imposed double liability on all shareholders or stockholders of banking institutions organized after the Constitution was adopted. By such provision the nature and extent of the rights conferred and of the liabilities imposed are fixed and can easily be determined thereunder. It contains no reference to legislative action as needed in its aid. Such provision has generally been held to be self-executing. 6 Fletcher, Cyc. Corp., § 4143, and cases cited thereunder.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.