[Civil No. 3125.   Filed April 9, 1932.]

[9 Pac. (2d) 1010.]

JAMES B. BUTTON, Superintendent of Banks of Arizona, *Ex-officio* Receiver of the CITIZENS STATE BANK, OF PHOENIX, an Arizona Corporation, Insolvent, Appellant, v. THE O. S. STAPLEY COMPANY, a Corporation, Appellee.

80

Mr. R. G. Langmade, for Appellant.

Mr. M. L. Ollerton, for Appellee.

ROSS, J.—The superintendent of banks, James B. Button, acting under the law concerning ''Banks and Banking'' (chapter 8, Rev. Code 1928 [section 209 et

seq.]), on July 30, 1930, took over the Citizens State Bank for the purpose of winding up and liquidating its affairs. On December 6, 1930, he filed his complaint against the O. S. Stapley Company, a corporation, for the sum of $2,000 as the owner of record of twenty shares of the stock of the bank, of the par value of $100 per share, alleging therein that "in the judgment of plaintiff the assets of said bank were insufficient to meet its liabilities and lacked in excess of one hundred thousand dollars ($100,000.00) of equaling the liabilities of said bank, excluding its capital stock, surplus and undivided profits; and plaintiff alleges that in his judgment the full one hundred per cent. (100%) stockholders' liability upon all of the stock of said bank is necessary to be collected for the payment of the creditors thereof. . . . "

The defendant filed a general demurrer to the complaint, and answered that in August, 1928, it had sold and transferred said twenty shares of stock to E. S. Wakelin, and had indorsed the same in blank and delivered the certificate to one L. L. Steward, secretary and cashier of the bank, to make the transfer on the bank's stock-books. When this answer was filed, plaintiff asked and received permission to amend his complaint to make Wakelin a party defendant. Wakelin filed a general demurrer to the amended complaint, which was sustained; but defendant corporation's demurrer was overruled, whereupon the trial proceeded against it. This defendant objected to the introduction of any evidence by plaintiff upon the following grounds, to wit: "That the complaint . . . fails to state a cause of action against said defendant in that said complaint failed to state that prior to the bringing of said action there had been a judicial determination of the fact of insolvency of the Citizens State Bank and the amount thereof, and for the further reason that said defendant had not been given a

legal opportunity to contest the insolvency of said bank and the amount thereof," which objection was sustained, and, plaintiff electing to stand on his complaint, judgment was entered against him. He has appealed from such judgment.

The question involved and the only one argued is suggested by defendant's objection to the introduction of evidence to support the allegations of plaintiff's complaint, and it is whether or not it is necessary under the statutes and Constitution as they now exist to have a judicial determination of the bank's insolvency and the amount thereof before the superintendent of banks can bring suit to enforce the stockholders' liability.

Section 11 of article 14 of the Constitution creates the stockholders' double liability, but it does no more. In other words, it does not prescribe the kind or character of remedy or procedure to be followed to enforce such liability nor when suit shall be brought. These, of course, were left to be prescribed by the legislature. *Cowden* v. *Williams,* 32 Ariz. 407, 55 A. L. R. 1059, 259 Pac. 670, *infra.* The legislature, in chapter 31, Laws of 1922, section 23, adopts the language of the Constitution fixing the stockholders' liability, and provides that such liability shall be enforced by the superintendent of banks for the benefit of the bank's creditors by an action in the nature of a creditors' suit or by any other available action, but is silent as to when such action may be commenced. While such chapter was the law, in *Cowden* v. *Williams,* 32 Ariz. 407, 55 A. L. R. 1059, 259 Pac. 670, we held that, where the question was as to when the action against stockholders accrued, so as to set the statute of limitations running, that it was upon "a judicial determination of the fact of insolvency." In *Dagg* v. *Hammons,* 34 Ariz. 445, 72 A. L. R. 1237, 272 Pac. 643, decided December 17, 1928, we approved of

the ruling in the Cowden case. *In re Bank of Winslow,* 36 Ariz. 507, 287 Pac. 444, we said:

"While under our decisions [citing the Cowden and Dagg Cases] such a determination is necessary, the method of obtaining it is more or less informal and in most cases, we daresay, can be arrived at from the reports of the receiver [superintendent of banks] showing the assets and liabilities."

In the Cowden, Dagg and Bank of Winslow cases it was determined that constitutional liability of a stockholder was not primary but secondary; that is, the stockholder could not be called upon to pay his double liability until it was judicially ascertained that the assets were insufficient to meet the bank's obligations. It was not intended, although we may have used some language of that import, to say that under the Constitution such determination must be had before suit to enforce its liability could be brought, but that such determination was necessary before judgment could be entered.

The facts in these three cases arose prior to July 1, 1929, the effective date of the Revised Code of 1928. In that revision, section 23 of chapter 31, Laws of 1922, was amended and carried forward as section 227 of the Banking Code. This amended section reads as follows:

"*Stockholders' Liability.* The stockholders of every bank shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements, of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock. In case of the dissolution or liquidation of any bank, the constitutional and statutory liability of the stockholders must be enforced for the benefit of the creditors of such bank by the superintendent of banks or by any receiver. The action to enforce such liability shall be commenced within three years after the clos-

ing of such bank, and may be commenced immediately upon the closing of the bank if in the judgment of the superintendent or receiver the assets of such bank are insufficient to meet its liabilities.''

In this section the legislature for the first time prescribed when the action to enforce the stockholders' liability may be commenced. This change in the statute, requiring actions to enforce such liability to be brought against the stockholders within three years after the closing of the bank, but permitting the superintendent or receiver, *if in his judgment the assets of the bank are insufficient to meet its liabilities; to commence an action immediately,* was no doubt made by the legislature for the purpose of fixing (1) a definite time for the beginning of the running of the statute of limitations and (2) to avoid the delay and expense incident to the obtaining of a formal judgment of insolvency before instituting proceedings to enforce such liability. That the legislature's power and duty to provide the procedure and the terms and conditions upon which the action to enforce the stockholders' liability may be commenced and prosecuted are ample there can be no doubt, *Lynch* v. *Jacobsen,* 55 Utah 129, 184 Pac. 929, the only restriction being that no judgment shall be entered until it is ascertained by the court that there is a deficiency against which to apply such liability. The legislature cannot make, of what we have said under the Constitution is a secondary liability, a primary liability, nor has it attempted to do so. It has said that, ''if in the judgment of the superintendent or receiver the assets of such bank are insufficient to meet its liabilities,'' an action may be commenced at once, and that of course means that it may be maintained.

The present complaint shows the existence of the facts authorizing the institution of the action, and, if on the trial it be determined that the assets are insufficient to pay the bank's obligations, the judgment

should go in favor of the superintendent of banks for all of the double liability, or, if less is necessary to meet the deficiency, then for such less amount.

We are of the opinion that the complaint, as against a general demurrer, was good, and that the objection to it upon the introduction of evidence was unsound and should have been overruled.

We are of the opinion, also, that the court erred in sustaining the general demurrer of defendant Wakelin. If, as a matter of fact, Wakelin, and not the Stapley Company, was the owner of the twenty shares of stock involved, as is alleged in the answer of the Stapley Company, it seems to us the question might be well litigated in this proceeding, and that therefore Wakelin was a proper party defendant. *Williams* v. *Hall,* 30 Ariz. 581, 249 Pac. 755; *O'Connor* v. *Irvine,* 74 Cal. 435, 16 Pac. 236.

The judgment is reversed and the cause remanded, with directions that further proceedings be had in accordance with this opinion.

McALISTER, J., concurs.

LOCKWOOD, J., Dissenting.—I regret to state that I cannot concur in the conclusion reached by my associates in this case, although I agree with many of the propositions of law stated in the prevailing opinion. It is because in my judgment the ultimate conclusion as to the disposition of the case reached by them is so contrary to the only possible logical and legal deductions from those fundamental propositions that I think it necessary to record my reasons for disagreement.

They have stated that the liability of a stockholder in an insolvent bank is a constitutional one, and is secondary in its nature. They also, as a necessary corollary, hold that, unless it be proved, first, that the bank is as a matter of fact insolvent, and, second,

that the insolvency is of such an extent that it is necessary to levy an assessment on the stockholders to meet it, no judgment can be recovered against any stockholder under the constitutional provision, and that the stockholder must be given an opportunity to contest judicially the liability which is alleged to exist. With these principles I agree most heartily.

We have previously held in *Cowden* v. *Williams,* 32 Ariz. 407, 55 A. L. R. 1059, 259 Pac. 670, *Dagg* v. *Hammons,* 34 Ariz. 445, 72 A. L. R. 1237, 272 Pac. 643, and *In re Bank of Winslow,* 36 Ariz. 507, 287 Pac. 444, that under the statute as it existed up to 1928 the right of action against a stockholder did not arise until a judicial determination of the fact and extent of the insolvency, and that the statute of limitations did not begin to run till then. The legislature modified the then existing statute by adopting section 227 of the Revised Code of 1928, which is quoted in the prevailing opinion, *supra,* in full, and it is with the conclusion of the majority of the court as to the effect of the last sentence of that section that I differ.

Their opinion holds that its effect is threefold: (1) To fix a definite time for the beginning of the running of the statute of limitations; (2) to avoid the necessity of having a formal judicial declaration of insolvency *before* the commencement of a suit against the stockholders; and (3) to alter the rules of pleading by permitting the plaintiff to omit from his complaint the allegation of one of the facts which they state it is absolutely essential for him to prove in order to sustain a judgment against the defendant. So far as the first two propositions stated are concerned, I agree with the prevailing opinion. There is no doubt that the legislature has the power to regulate the procedure to be used in enforcing a constitutional liability so long as that regulation

does not substantially alter or enlarge the liability itself. But the fact that it has such power does not raise the presumption that it has used it in a purposeless, illogical, and unnecessary manner.

The common-law system of pleading has grown up through the experience of many centuries, and, except where altered by statutory enactment, is still in force. It is true that Arizona is what is called a "Code state," and that many of the technical refinements of common-law pleading have been abolished. It is also true that the legislature may, if it desires, abolish every rule of pleading, technical or otherwise, but it has always been held that, in the absence of some specific enactment changing the common-law system, the latter is still in force. *Greenlee County* v. *Cotey,* 17 Ariz. 542, 155 Pac. 302; *Faulkner* v. *First National Bank,* 130 Cal. 258, 62 Pac. 463; *Cole* v. *Reynolds,* 18 N. Y. 74. One of the fundamental principles of common-law pleading also is that a plaintiff must *allege* in his complaint the existence of every *fact* which it is necessary for him to prove in order to sustain a judgment. *Greenlee County* v. *Cotey, supra; Union Bank* v. *Himmelbauer,* 68 Mont. 42, 216 Pac. 791; *Volker-Scowcroft Co.* v. *Vance,* 36 Utah 348, Ann. Cas. 1912A 124, 24 L. R. A. (N. S.) 321, 103 Pac. 970; *Griffin* v. *Chicago etc. Ry. Co.,* 67 Mont. 386, 216 Pac. 765; *West Monroe Mfg. Co.* v. *Town of West Monroe,* 146 La. 641, 83 South. 881. I believe no case can be found in all the long array of decisions, English or American, which denies this principle, and I know of no statute which has attempted to modify or abrogate it. And yet this is precisely what my associates say the legislature has done in the section of the statute above set forth. If so, I am satisfied it is the first and only case in the history of American law in which a legislature has made this attempt.

It is admitted that it is not sufficient for a plaintiff to prove that the superintendent of banks merely *thinks* the bank is insolvent—he must prove that *as a matter of fact* it is insolvent, and his opinion, unless it be proved to be a fact, will not sustain a judgment. If such be the case, under every principle of pleading, in his complaint he should allege, not as a matter of opinion, but as a matter of fact, that the bank is insolvent, for this is precisely what he must prove.

It may be contended that we have many cases in which the plaintiff alleges necessary facts "upon information and belief." If, however, these pleadings and cases are examined carefully, it will be found that, while informatian and belief is stated as the *basis* of the plaintiff's allegation, nevertheless the ultimate conclusion which he must allege is the *positive existence* of the fact which he must prove, and it is almost invariably held that a mere allegation of his information and belief that the fact exists is not sufficient. *Sebastian County* v. *Hocott,* 141 Ark. 301, 217 S. W. 258; *Meeker* v. *C., R. I. & P. Ry. Co.,* (Mo. App.) 255 S. W. 340; *Bank of North America* v. *Rindge,* (C. C.) 57 Fed. 279; *Hulse* v. *Nash,* 332 Ill. 500, 163 N. E. 792; *Swank* v. *Sweetwater Irr. etc Co.,* 15 Idaho 353, 98 Pac. 297; *Patterson* v. *Caldwell,* 1 Met. (Ky.) 489; *Warburton* v. *Ralph,* 9 Wash. 537, 38 Pac. 140; *Prescott & Bros.* v. *Annis,* 6 Ky. Op. 289; *Nichols & Shepard Co.* v. *Hubert,* 150 Mo. 620, 51 S. W. 1031.

There are a very few cases which at the first glance seem to hold the contrary, but, on examination of these, it will be found that the real holding of the court is that under the peculiar circumstances of the case the language used would be considered an allegation of ultimate fact and not merely of opinion. *Dial* v. *Gary & Tappan,* 24 S. C. 572; *McFarland* v.

*City of Muscatine,* 98 Iowa 199, 67 N. W. 233; *Robinson* v. *Ferguson,* 119 Iowa 325, 93 N. W. 350. The logical reason for the rule is the impossibility of traversing an allegation of opinion successfully. If the defendant denies the allegation, he merely denies that the superintendent ''believes'' the bank to be insolvent, which issue has nothing to do with defendant's liability. Defendant's only possible legal way of raising the question is by demurrer, as was done in the case at bar.

Now, I agree that, if the legislature desires to enact in its regulation of pleading that it is not necessary to allege what must be proved, it has the power to do so, and I further admit that, if the same legislature desires to enact that in pleading the use of the word ''black'' signifies the condition which has always previously been called ''white,'' it has that power, and the courts will bow to its will. But I submit that, before we attribute to the legislature an intent to depart so widely from the usual rules of pleading and definitions of words, its intent should be signified in the most positive and unmistakable manner. We have frequently held that an absurd construction is not to be attributed to legislative language if there is any reasonable meaning to be drawn therefrom, and this is particularly true when the absurd construction is unnecessary and is useless to carry out any practical purpose.

In the case at bar, the situation which the legislature obviously meant to remedy was the necessity for the superintendent of banks to file two suits, first, to declare the insolvency, and second, to recover the assessment, and not the necessity of his proving the *actual* insolvency, for this last it could not constitutionally do. It amended section 227, *supra,* so that unquestionably it is no longer necessary for him to file two suits, but it is utterly unnecessary for the

accomplishment of this result that we should also hold that the legislature intended to alter a fundamental rule of pleading or the ordinary meaning of the English language. The only effect of such a statute would be to avoid the necessity of the superintendent's stating specifically that the condition which he must *prove positively,* to wit, the insolvency of the bank, existed not only in his opinion, but as a matter of fact. Of what purpose or value could such a law be?

I realize that from the standpoint of immediate practical results the question involved is of little moment. If the opinion of the majority is correct, *this* case will have to be retried; if my view of the law is correct, it will merely be a *new* case of the same type which will be tried. The trial procedure, the evidence, and the judgment will be the same either way. But, when such is the situation, it seems to me that it is more in consonance with the usual rules of statutory construction for this court to adopt a logical, simple, and reasonable interpretation of the intent of the legislature rather than one which necessarily leads to the conclusion that that body intended to violate every precedent and principle of logical and consistent pleading for the sole purpose, if any, of being different, or else for no purpose at all.

Since a demurrer was seasonably interposed to the complaint, raising the question as to whether it stated a cause of action, and since under every case of which I have knowledge the test of the sufficiency of a complaint is whether, if the pleader proves exactly what he alleges, neither more nor less, he is entitled to a judgment, I believe the trial court properly held the complaint to be insufficient for failing to *allege* the insolvency of the bank *as a fact,* instead of an opinion, when it was absolutely necessary to sustain the judgment *to prove it as a fact,* and not as

an opinion, and properly sustained the demurrer. The judgment of the trial court should therefore be affirmed. This would in no manner bar the superintendent of banks from filing another suit in which he stated on information and belief, if he so desired, that as a matter of fact the bank was insolvent, and proceeding to judgment thereon if he could prove his facts, nor would the necessity of filing a new suit delay or hamper him in his recovery in the slightest degree, since the reversal of the judgment as ordered in the majority opinion will require a new trial in any circumstances, before a recovery of judgment.