[Civil No. 4505. Filed October 5, 1942.]

[129 Pac. (2d) 668.]

WALTER MILLER, Appellant, v. T. H. WILSON, Appellee.

Messrs. Patterson & McFate, for Appellant.

Messrs. Morgan & Locklear, for Appellee.

LOCKWOOD, C. J.—T. H. Wilson, plaintiff, applied to the superior court of Yavapai county for a writ of prohibition against the board of supervisors of said county, defendants, prohibiting them from canvassing the result of a certain recall election which was held on February 17, 1942. The alternative writ was issued, and Walter Miller, intervener, asked permission to appear in the proceedings. His request was granted and the matter was heard by the court, and the alternative writ made permanent, whereupon intervener appealed.

The material facts upon which the proceeding is based are agreed to by counsel, and may be stated

as follows: On January 9, 1942, a recall petition in due form was filed with the clerk of defendants, asking for the recall of plaintiff from the office of justice of the peace of Seligman justice precinct. On January 19 defendants made an order for a recall election to be held on February 17. Subsequent thereto intervener became a candidate for justice of the peace at said election. The election was held on the date designated, and intervener received a majority of all the votes cast for the office of justice of the peace of Seligman precinct. Return was duly made of the result of the election to defendants, and February 24 being the date set for canvass of the return, plaintiff filed his petition for a writ of prohibition as above set forth.

It is agreed by counsel there are three questions of law involved in this appeal: (a) Is there a method provided by law for recalling justices of the peace, (b) if so, was this method properly followed in the recall proceedings, and (c) is prohibition a proper remedy to question the validity of the recall election under the facts above set forth?

Article 8 of the Constitution of Arizona governs the question of removal from office. Section 1 thereof reads, so far as material, as follows:

"(*Recall petitions.*)—Every public officer in the state of Arizona, holding an elective office, either by election or appointment, is subject to recall from such office by the qualified electors of the electoral district from which candidates are elected to such office. . . ."

Section 2 provides directions as to the form of recall petitions, and contains the following language:

"(*Form of petitions.*)—Every recall petition . . . must be filed in the office in which petitions for nominations to the office held by incumbent are required to be filed. . . ."

It is admitted that the petition was in the form provided by the section and was filed in the office of the

clerk of defendants. Section 55–1003, Arizona Code 1939.

Section 3 contains the following provisions:

"(*Recall election.*)—. . . If he [the officer to be recalled] shall not resign within five days after a recall petition is filed, a special election shall be ordered to be held, not less than twenty, nor more than thirty days after such order, to determine whether such officer shall be recalled. . . ."

The balance of the section deals with the form of the ballot and requires that incumbent should continue to perform the duties of the office *ad interim*.

Section 4 sets forth the manner in which other candidates may cause their names to be placed upon the ballot, and other details regarding the election. It is agreed that intervener complied with the constitutional provisions.

Section 6 reads as follows:

"(*Conduct of election.*)—The general election laws shall apply to recall elections in so far as applicable. Laws necessary to facilitate the operation of the provisions of this article shall be enacted, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer."

The legislature, in compliance with the provisions of section 6, *supra,* adopted article 2 of chapter 60, Arizona Code 1939. This article purports to set up a complete procedure for recalling officers. Section 60–202 thereof states by whom the election ordered to be held, under section 3, article 8, *supra,* shall be ordered. It reads, so far as material, as follows:

"*How election called and by whom.*—A recall election shall be called, if for a state office, by the governor; if for a county officer, or judge or other officer of the superior court of a county, or member of the legislature elected from such county, then by the board of supervisors of that county; if for a city or town

officer, then by the legislative body for that city or town; if for a trustee of a school district then by the county school superintendent of the county wherein such school district is located; . . ."

The balance of article 2, chapter 60, *supra,* contains details as to how recall elections shall be conducted, and it is agreed that the procedure set forth therein for the recall of county officers was followed in the conduct of the election involved herein. Precinct officers are not mentioned specifically in any manner in article 2, *supra.*

It is urged by plaintiff that article 8, *supra,* is not self-executing, and since there is no method found in the statutes specifically setting forth the procedure for the recall of precinct officers, the whole election was invalid.

On the other hand, it is contended by intervener that by its language and by reasonable implication therefrom, the article is self-executing and does set up a definite and sufficient procedure for recalling precinct officers, and that this procedure was substantially followed.

The question then arises as to whether the constitutional provision is self-executing. When the first state constitutions were adopted they were generally considered as establishing a mere framework of government and securing certain fundamental rights to the people, but leaving all other matters to the various departments of government created by the Constitution. The presumption then naturally arose that legislation was necessary to carry into effect the various provisions of the Constitution. Of late, however, state constitutions have usually been drafted upon a different principle and have frequently, in many particulars, been deliberately prepared as a code of laws intended to operate directly upon the people without the necessity of further legislative action. It is, there-

fore, very frequently held now that the presumption is that constitutional provisions are self-executing *if, by their terms, it is apparent that such was the intent of their framers. Winchester* v. *Howard,* 136 Cal. 432, 64 Pac. 692, 69 Pac. 77, 89 Am. St. Rep. 153; *Detroit* v. *Oakland Circuit Judge,* 237 Mich. 446, 212 N. W. 207.

 One of the methods of determining whether a constitutional provision is self-executing is whether it merely lays down general principles or attempts to supply a sufficient method whereby the rights which it grants may operate without the aid of further legislative enactment. It follows that if a constitutional provision grants a right which can be put into operation without further legislative action, the provision is self-executing.

 Upon a careful reading and examination of article 8, *supra,* there can be no question that its framers intended that it should be operative without the necessity of future legislation. It not only lays down a general principle to the effect that all elective public officers, which of course includes justices of the peace, are subject to the recall, but it goes into minute detail as to how they shall be recalled, even to the extent of providing the form of petition for the recall and the manner in which it shall be signed, and the form of the ballots to be used, together with a provision that the general election laws shall apply to recall elections. We think it would have been impossible for the framers of the Constitution to indicate more clearly their intent that the recall provision should be self-executing.

The difference between self-executing constitutional provisions and those which are not is clearly shown, comparing the very definite provisions of article 8 *supra,* in regard to recall elections, with the general declaration in regard to primary elections contained in section 10 of article 7 of the Constitution. And all

the proceedings leading up to the framing and adoption of the Constitution show it was the intent that the recall, like the initiative and referendum, should be self-executing.

But, says plaintiff, there is a fatal flaw in the method of holding recall elections set forth in the Constitution, in that it directs the election to be called but fails to specify who should call it.

■ The Constitution itself expressly directs where the recall petition shall be filed. Section 2, article 8, *supra*. In the case of justices of the peace it is in the office of the clerk of the board of supervisors, and all petitions officially filed with the clerk, which require action, are acted upon by the board of supervisors. Section 55–1003, *supra;* section 17–307 and section 17–309, subdiv. 22, Arizona Code 1939. We think the reasonable implication of the constitutional provision is that petitions for the calling of a recall election, which by its terms and the statutes are required to be filed with the clerk of the board of supervisors, are to be acted upon by such board.

The question of whether constitutional provisions for the recall of public officers are self-executing has been before the courts of several states. Upon an examination and comparison of our Constitution with these others, and a consideration of its history and the time of its adoption, we think it is very evident that ours was taken from the state of Oregon. The Supreme Court of that state, in *State* v. *Harris,* 74 Or. 573, 144 Pac. 109, Ann. Cas. 1916A, 1156, held that its constitutional provision was specifically meant to be self-executing. It is true that there was an express provision in section 18, article 2 of the Oregon Constitution, to the following effect:

"The recall petition shall be filed with the officer with whom a petition for nomination to such office

should be filed, *and the same officer shall order the special election when it is required."* (italics ours),

and that while our Constitution provides for filing the recall petition with the officer with whom a nomination petition should be filed, the italicized language above was omitted. We think, however, that this was done rather because it was considered tautological and unnecessary than because it was meant to omit a necessary part of a self-executing constitutional mandate, and that the reasonable implication was that the petition was to be acted upon by defendants.

It is true that in Kansas and Colorado, on somewhat similar conditions, a contrary conclusion was reached. *State* v. *Deck,* 106 Kan. 518, 188 Pac. 238; *Hall* v. *Cummings,* 73 Colo. 74, 213 Pac. 328; *Guyer* v. *Stutt,* 68 Colo. 422, 191 Pac. 120. We think, however, that in passing upon the question these courts followed the old presumption that constitutional provisions were not self-executing and failed to give the proper weight to the rule of implications to be drawn from the positive language of the Constitution.

Since the constitutional provision, taken in connection with the general election law, provided an adequate procedure for the calling of the recall election in question, and since there is no contention that the procedure thus set forth was not substantially complied with by defendants, it follows that it was their duty to proceed to canvass the result of the election and declare it, and the trial court erred in granting the writ of prohibition.

In view of what we have said, it is unnecessary for us to determine whether prohibition would have been a proper remedy under any circumstances.

The judgment is reversed and the case remanded with instructions to quash the writ of prohibition heretofore issued.

McALISTER and ROSS, JJ., concur.