880 P.2d 682

PIONEER ANNUITY LIFE INSURANCE COMPANY, an Arizona corporation, by S. David CHILDERS, Director of Insurance and Receiver, and Ray E. Gill, Deputy Receiver for Pioneer Annuity Life Insurance Company, Petitioner–Appellee,

v.

Jack D. RICH and Verna Rich, his wife, Respondents–Appellants.

No. 1 CA–CV 91–0349.

Court of Appeals of Arizona, Division One, Department E.

Jan. 27, 1994.

Review Denied Sept. 20, 1994.

Stockton & Hing by Robert Ong Hing, Thomas F. Ames, Scottsdale, for respondents-appellants.

Guttilla & Murphy by Eileen T. Baldwin, Phoenix, for petitioner-appellee.

## OPINION

McGREGOR, Judge.

The Arizona Constitution makes shareholders of banking or insurance corporations individually responsible for all contracts, debts, and engagements of the corporation to the extent of the par value of their stock, in addition to the amount invested in the shares. Ariz. Const. art. XIV, § 11 (section 11). In this appeal, we consider whether section 11 is self-executing. If it is, we must decide when a cause of action accrues and

whether the receiver for an insolvent insurance company may bring an action on behalf of the company's creditors.

## I.

In 1974, appellant Jack Rich (Rich) purchased all 250,000 outstanding shares of stock in Pioneer Annuity Life Insurance Company (Pioneer). In December 1984, because of Pioneer's financial difficulties, the Director of the Arizona Department of Insurance (Director) placed Pioneer under the supervision of the Department of Insurance (Department). Following an administrative hearing on March 4, 1985, the Director found Pioneer insolvent and appointed a conservator. On May 1, 1985, the Director filed an action in superior court seeking appointment of a receiver for Pioneer. On May 8, 1985, the trial judge declared Pioneer insolvent, placed Pioneer into receivership, appointed the Director as receiver, and instructed him to continue with Pioneer's liquidation. On May 7, 1986, the Director, acting as receiver, brought an action against Rich, as sole shareholder, to recover $250,000 (the par value of Rich's stock in Pioneer) for Pioneer's "contracts, debts, and engagements."

The receiver's action against Rich relied upon section 11, which provides:

> The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock; ....[1]

Ariz. Const. art. XIV, § 11.

Pioneer filed two motions for summary judgment. In resolving those motions in Pioneer's favor, the trial court ruled that section 11 is self-executing; that the receiver appointed to collect a corporation's assets is a proper party to sue to enforce the liability; and that the receiver timely brought this action, which accrued under section 11 upon the judicial determination of insolvency. The court rejected Rich's argument that material issues of fact existed regarding whether payments he made to the corporation prior to receivership satisfied his constitutional obligation, finding that Rich failed to present competent evidence that he actually contributed money to the corporation.

Rich appealed from the judgment in favor of Pioneer, challenging all the conclusions and findings described above. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101.B.

## II.

■ In reviewing a trial court's grant of summary judgment, we review questions of law de novo. Libra Group, Inc. v. State, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.), rev. denied, 168 Ariz. 337, 813 P.2d 318 (1991). We view all facts in the light most favorable to the party against whom judgment was entered. State ex rel. Corbin v. Challenge, Inc., 151 Ariz. 20, 24, 725 P.2d 727, 731 (App.1986).

### A.

■ We first consider whether section 11 is self-executing. Rich contends that section 11 is not self-executing because it does not provide "a sufficient method whereby the rights which it grants may operate without the aid of further legislative enactment," quoting Miller v. Wilson, 59 Ariz. 403, 408, 129 P.2d 668, 670 (1942).[2]

The Arizona Supreme Court, however, has already considered and rejected Rich's argument. In Fredericks v. Hammons, 33 Ariz. 310, 264 P. 687 (1928), the shareholders of an insolvent banking institution challenged section 11 and banking legislation enacted pur-

---

1. Provisions such as section 11 often are referred to as "double liability provisions" because the stockholders may lose twice the amount of their original investment.

2. Although Arizona's legislature enacted statutes to enable enforcement of this provision as it applies to banks, see ch. 31, § 23, 1922 Ariz.Sess. Laws, the legislature has never enacted laws enabling enforcement of section 11 against insurance company shareholders.

suant to that section,[3] arguing the double liability provisions that were part of both section 11 and the legislation were unenforceable. The *Fredericks* court first held that the banking legislation did not impair the obligations of contract and therefore did not violate the United States Constitution. The court then stated:

> Besides, *there is no doubt that section 11 of article 14 of the state Constitution is self-executing* and itself imposed double liability on all shareholders or stockholders of banking institutions organized after the Constitution was adopted. By such provision the nature and extent of the rights conferred and of the liabilities imposed are fixed and can easily be determined thereunder. It contains no reference to legislative action as needed in its aid. Such provision has generally been held to be self-executing.

*Id.* at 323, 264 P. at 691–92 (emphasis added).

Rich urges us to disregard the court's statement concerning the self-executing nature of section 11, contending that the language is mere *dicta*, given the court's holding that the banking legislation imposed liability upon the bank shareholders. We disagree.

The *Fredericks* court made it clear that, even if no legislation on point had existed, the bank shareholders would have been liable to the creditors of the banking institution under section 11. *Id.* at 323, 264 P. at 691–92. "[C]onstitutional provisions are self-executing *if, by their terms, it is apparent that such was the intent of their framers.*" *Miller,* 59 Ariz. at 408, 129 P.2d at 670 (emphasis in original) (citation omitted). In *Fredericks,* the supreme court not only upheld the legislation but also clearly expressed its view that the framers intended that section 11 be self-executing. When, as occurred in *Fredericks,* a court "relie[s] on both grounds discussed in the opinion ..., neither holding is dictum." *State v. Pena,* 140 Ariz. 545, 548, 683 P.2d 744, 747 (App.1983); *see also Dragor Shipping Corp. v. Union Tank Car Co.,* 371 F.2d 722, 726 (9th Cir.1967) ("Where an appellate court decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*"). We interpret the supreme court's statement that section 11 is self-executing as one of the grounds relied upon in its opinion. The holdings of the Arizona Supreme Court bind this court. *Bade v. Arizona Dep't of Transp.,* 150 Ariz. 203, 205, 722 P.2d 371, 373 (App.1986). We conclude that the supreme court has decided the first issue Rich argues and therefore regard section 11 as self-executing.

Rich contends, however, that the banking case of *Button v. O.S. Stapley Co.,* 40 Ariz. 79, 9 P.2d 1010 (1932), which referred to *Cowden v. Williams,* 32 Ariz. 407, 259 P. 670 (1927), implicitly overruled the *Fredericks* holding that section 11 is self-executing. Specifically, Rich relies upon the following statement in *Button:*

> Section 11 ... creates the stockholders' double liability, but it does no more. In other words, it does not prescribe the kind or character of remedy or procedure to be followed to enforce such liability nor when suit shall be brought. These, of course, were left to be prescribed by the legislature.

*Button,* 40 Ariz. at 82, 9 P.2d at 1011 (citing *Cowden,* 32 Ariz. 407, 259 P. 670).

Neither *Button* nor *Cowden,* however, addressed the issue whether section 11 is self-executing; rather, those cases considered (and upheld) the constitutionality of banking laws the Arizona legislature passed pursuant to section 11. In *Cowden,* an insolvent bank's shareholders challenged the constitutionality of banking legislation that permitted a receiver to enforce the rights of individual creditors against the shareholders.[4] The court held that the statute did not conflict with section 11 and did not violate the shareholders' constitutional rights.[5] In *Button,* the supreme court considered whether the legislature had authority to permit a cause of

---

3. Ch. 31, § 23, 1922 Ariz.Sess.Laws.

4. Ch. 31, § 23, 1922 Ariz.Sess.Laws.

5. As we discuss in section C, *infra,* the supreme court also held, in *Cowden,* that a claim based

upon section 11 accrues, and the statute of limitations begins to run, upon a judicial determination of insolvency. 32 Ariz. at 422, 259 P. at 675.

action against bank shareholders to accrue at a time earlier than that which the constitution otherwise would imply. The court held that the legislature could do so, but that the constitution prohibited entry of judgment against the shareholders until after a judicial determination of insolvency. *Button,* 40 Ariz. at 84, 9 P.2d at 1011.

The holdings of *Cowden* and *Button* are consistent with the principle that self-executing constitutional provisions generally do not bar legislation on the same subject. *Direct Sellers Ass'n v. McBrayer,* 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972). Thus, the court's approval of legislation that addressed the enforcement of section 11 against bank shareholders is consistent with its *Fredericks* holding that section 11 is self-executing and enforceable.[6]

## B.

■ Rich also argues that, even if section 11 is self-executing, it is unenforceable because the constitution is silent about who may enforce its provisions. Rich's argument that the provision is unenforceable leads to the untenable conclusion that the legislature could eliminate a constitutional right of recovery simply by choosing not to enact legislation to implement the constitutional provision. We reject that approach and instead agree with the Minnesota Supreme Court, which considered a similar argument and held:

Does the discharge of a Minnesota corporation in bankruptcy release its stockholders from the liability for its debts imposed by section 3, art. 10, of our state Constitution? This provision is self-executing, otherwise the Legislature by its nonaction

could emasculate it, and it creates an individual liability on the part of a stockholder for corporate debts, to an amount equal the amount of stock held or owned by him. The Legislature cannot defeat this obligation, but it may prescribe the procedure for the enforcement of the liability. In the absence of such legislation, equity can and will find a way for its enforcement.

*Way v. Barney,* 116 Minn. 285, 133 N.W. 801, 801 (1911).

■ In general, when a constitution or statute fixes a liability without providing a remedy, the "creditors may enforce it in an ordinary action either at law or in equity[.]" *Lynch v. Jacobsen,* 55 Utah 129, 184 P. 929, 932 (1919). As the Arizona Supreme Court has noted, however, "[l]iquidation proceedings require all claims against the insurer to be filed with the receiver, A.R.S. § 20–628(A), and prevent individual actions against the insurer, A.R.S. § 20–630." *State v. Arizona Pension Planning,* 154 Ariz. 56, 61, 739 P.2d 1373, 1378 (1987). Pioneer's involvement in liquidation proceedings therefore appears to bar individual creditors from enforcing their constitutional right to contribution from Pioneer's shareholders. The receiver, however, "stands not only in the shoes of the corporation but also in the shoes of bona fide creditors of the corporation." *Gloyd v. Rutherford,* 62 Wash.2d 59, 380 P.2d 867, 868 (1963); *see also Giesler v. Sedro Hardwood Co.,* 167 Wash. 647, 9 P.2d 1104, 1106 (1932). The receiver, as the person appointed to protect the creditors' rights in the insolvency proceedings, therefore may enforce their constitutional rights on their behalf. *See Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co.,* 159 Ariz. 148, 153, 765 P.2d 550, 555 (App.1988). The trial court did

---

**6.** Courts in other states with similar constitutional provisions imposing double liability upon shareholders of banks and insurance corporations also generally have held that the provisions are self-executing. *See Dupee v. Swigert,* 127 Ill. 494, 21 N.E. 622, 625 (1889) (holding that a constitutional provision similar to Arizona's article XIV, section 11 was self-executing); *Way v. Barney,* 116 Minn. 285, 133 N.W. 801, 801 (1911); *Lynch v. Jacobsen,* 55 Utah 129, 184 P. 929, 931 (1919). Courts have reached that conclusion despite the existence of legislation on the subject, and even when the constitution directs the legislature to act. *See People v. Adams State*

*Bank,* 272 Ill. 277, 111 N.E. 989, 990–91 (1916), *error dismissed,* 254 U.S. 658, 41 S.Ct. 5, 65 L.Ed. 461 (1920) (holding that a section of the state's banking legislation did not conflict with the self-executing constitutional provision); *Austin v. Campbell,* 210 S.W. 277, 279 (Tex.Civ.App. 1919) (stating that a constitutional provision providing for bank stockholders' double liability was self-executing, even though that constitutional provision appeared in a paragraph beginning, "The Legislature shall, by general laws, authorize the incorporation of [banks], ... and shall provide for a system of state supervision, regulation and control....").

not err in holding that the Director, as receiver, has authority to enforce section 11 against Rich for the benefit of Pioneer's creditors.

## C.

Rich next claims that, even if he were liable under the constitutional provision, the Director's failure to sue within the applicable statute of limitations period bars the claim. The parties agree, and we assume for this opinion, that the one-year statute of limitations set out in A.R.S. section 12–541 governs this action.[7]

The timeliness of this action depends upon whether the cause of action accrues upon an administrative finding of insolvency or only upon a judicial determination of insolvency. In the first instance, Pioneer's claim is barred. In the latter, it is not.

Once again, the Arizona Supreme Court has addressed this issue. In *Cowden*, the court held that "the double liability of stockholders under the constitutional provision ... did not give rise to a cause of action until a judicial determination of the fact of insolvency, and necessarily the statute of limitations does not commence to run until then." 32 Ariz. at 422, 259 P. at 675; *see also In re Bank of Winslow*, 36 Ariz. 507, 509, 287 P. 444, 445 (1930) (holding that judicial determination of deficiency of assets fixes the stockholders' liability and starts the running of the statute of limitations). Rich seeks to avoid the holding of *Cowden* through three arguments.

First, Rich argues that *Cowden*'s holding that a cause of action arises only upon a judicial determination of insolvency does not apply because *Cowden* discusses section 11's application to bank shareholders, not insurance company shareholders. This argument is frivolous. The constitutional provision, by its terms, applies to both banks and insurance companies. *See* Ariz. Const. art. XIV, § 11. The holding in *Cowden*, which expressly refers to the liability of shareholders *under the constitutional provision*, necessarily applies to both categories of shareholders defined in the constitutional provision.

Second, Rich argues that *Cowden* "arose prior to July 1, 1929, the effective date of the Revised Code of 1928," and therefore does not apply to this case. The 1928 Code permitted a claim against *bank shareholders* to accrue immediately "if in the judgment of the superintendent or receiver the assets of such bank are insufficient to meet its liabilities." Banking Code § 227, Revised Code of 1928, *quoted in Button v. O.S. Stapley Co.*, 40 Ariz. 79, 84, 9 P.2d 1010, 1011 (1932). In *Button*, the court upheld the legislature's authority to set the earlier date for bringing an action, even though it approved the *Cowden* court's holding that under the constitutional provision the cause of action accrues upon a judicial finding that a bank is insolvent. *Button*, 40 Ariz. at 82–84, 9 P.2d at 1011. The legislature has not set a date other than that implied in the constitution for accrual of the cause of action against insurance company shareholders. Therefore, we will apply the *Cowden* court's interpretation of the constitutional provision to actions against insurance company shareholders unless and until the legislature provides otherwise.

Finally, Rich argues that, absent a controlling statute, a cause of action accrues when one party may institute suit against another, citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (App. 1986). Rich then states, in conclusory fashion, that Pioneer could have instituted suit against Rich when the Department made an administrative finding of insolvency. We find it unnecessary to determine whether Pioneer had *any* claim against Rich prior to the judicial determination of insolvency. Under *Cowden*, a claim based upon section 11 does not arise until the judicial determination.

7. On appeal, Pioneer contends that statutes of limitations do not apply to actions the state brings. Before the trial court, however, Pioneer conceded that the one-year statute of limitations governs this action and chose to argue only about when the cause of action accrued. Thus, Pioneer waived the argument that the statute of limitations does not apply to the state, and we do not address that argument. *Westberry v. Reynolds*, 134 Ariz. 29, 33, 653 P.2d 379, 383 (App. 1982) (holding that court of appeals will not consider arguments not raised in the trial court).

A holding that a cause of action accrues only upon a judicial determination of insolvency also is consistent with the secondary nature of the shareholders' liability. In *Cowden*, the court also held that, under the constitution, the corporation is primarily liable for its debts and the shareholders are only secondarily liable. 32 Ariz. at 421, 259 P. at 675. Therefore, until it appears that "there will be a deficit after the assets are exhausted which the stockholders will be compelled to make up," the creditors have no cause of action against the stockholders. *Cowden*, 32 Ariz. at 421, 259 P. at 675. As Pioneer points out, an insurance corporation can be found insolvent for the purposes of an administrative order even when sufficient assets exist to pay all the corporation's debts, if its assets are not invested properly under the statute. *See* A.R.S. §§ 20–501 to –561 (West 1990 & Supp.1993). The judicial declaration of insolvency, in contrast, marks the point at which the court determines that "there will be a deficit after the assets are exhausted." *Cowden*, 32 Ariz. at 421, 259 P. at 675. Thus, the constitutional cause of action can accrue only at the time of a judicial declaration of insolvency. Because Pioneer filed suit within one year of the judicial declaration of insolvency, the action is timely.

### D.

■ Finally, Rich contends that he discharged any obligation imposed by section 11 by contributing money to Pioneer and guaranteeing loans to Pioneer before the judicial determination of insolvency. The trial court concluded that Rich did not present competent evidence to show he contributed funds to Pioneer and therefore raised no material issue of fact. We agree.

■ "Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact, that only one inference can be drawn from those facts, and that based upon the facts, the moving party is entitled to judgment as a matter of law." *Nelson v. Nelson*, 164 Ariz. 135, 137, 791 P.2d 661, 663 (App.1990) (quoting *Auto–Owners Ins. Co. v. Moore*, 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988)).

This court considers only evidence presented to the trial court. *Id.* at 138, 791 P.2d at 664.

On appeal, Rich first alleges that he contributed $240,000 to Pioneer in December 1982. The only evidence Rich presented to the trial court was an affidavit in which Rich made the conclusory statement that he "provided to and caused to be paid to [Pioneer], after [Pioneer] became insolvent, additional amounts in excess of $250,000.00 for the payments of contracts, debts, and engagements of [Pioneer]." In response to extensive questioning by the trial court about the alleged transaction, Rich's attorney stated that he "wouldn't say [the money] was put in the corporation. What exactly he did was he satisfied debt of the corporation by paying off or pledging monies or putting up collateral for the corporation subsidiary." When the court pointed out that paying a subsidiary's debt is "not a typical parent corporation responsibility for a subsidiary," the attorney explained that his "understanding of it [was] that the money that was ... paid was to satisfy an obligation which ultimately would be [Pioneer's]," but that he "just [didn't] know" how that was so. Even taking the view of the evidence most favorable to Rich, we conclude that the trial court properly found that Rich's conclusory statement failed to create a material issue of fact.

Rich also asserts that he guaranteed loans totalling $500,000 to Pioneer in 1984. Again, even viewing the facts in the light most favorable to Rich, we conclude that Rich's guarantee of loans to Pioneer does not constitute a payment for Pioneer's contracts, debts, or engagements. We agree with the trial court that no genuine issue of material fact remained and that Pioneer was entitled to summary judgment as a matter of law.

### III.

For the reasons previously stated, we affirm the judgment in favor of Pioneer.

VOSS, P.J., and KLEINSCHMIDT, J., concur.